1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  THOMAS S. PATTERSON
   Supervising Deputy Attorney General
5  KENNETH T. ROOST, State Bar No. 231444
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA 94102-7004
7    Telephone: (415) 703-5824
     Fax: (415) 703-5843
8    Email: Ken.Roost@doj.ca.gov

9  Attorneys for Defendants
   Sather, Crawford, Curry, and Abanico
10

11

                  IN THE UNITED STATES DISTRICT COURT
12
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
13
                        SAN JOSE DIVISION
14

| | |
|---|---|
| **IVAN VERNARD CLEVELAND,** | C 07-2809 JF (PR) |
| Plaintiff, | **DECLARATION OF DEFENDANT ABANICO IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **BEN CURRY, Warden, et al.,** | |
| Defendants. | |

21      I, Correctional Officer Abanico, declare:

22      1.    I am presently an acting Correctional Sergeant at the Correctional Training Facility

23  (CTF), and one of the Defendants in this action. CTF is a state prison operated by the California

24  Department of Corrections and Rehabilitation (CDCR).

25      2.    This declaration is made in support of Defendants' motion for summary judgment. I

26  am competent to testify to the matters set forth in this declaration, and would do so if called upon

27  by this Court to testify.

28      3.    I have been employed by CDCR as a correctional officer at CTF since November 2004,

Decl. Abanico Supp. Defs.' Mot. Summ. J.                                   *Cleveland v. Curry, et al.*
                                                                          C 07-2809 JF (PR)

1   and have held the position of acting Correctional Sergeant at CTF since February 2008. Before

2   working at CTF, I was trained at CDCR's Richard A. McGee Correctional Training Center (the

3   Training Center). Part of this training includes instruction on how to properly perform a clothed-

4   body search and an unclothed-body search. Since my employment with CDCR, all of the body

5   searches I have conducted have been in conformance with the training and procedures taught at

6   the Training Center.

7       4.    One of my duties at CTF is to perform random clothed-body searches in the prison

8   hallway while inmates leave their cells for meals and yard time. In the West Corridor, where I

9   am often stationed to perform searches, six wings connect to each hallway, and each wing houses

10  approximately two-hundred inmates. Typically, four correctional officers will be assigned to

11  conduct clothed-body searches. These officers operate in pairs, for their safety and security. One

12  officer will conduct the search, while the officer's partner watches, prepared to take action if the

13  inmate resists. Typically, three inmates per wing, which amounts to eighteen inmates per

14  hallway, will be searched while inmates exit or enter their wing.

15      5.    I do not specifically recall inmate Ivan Cleveland (Plaintiff) or the clothed-body

16  search that is the subject of this action, but will go on to describe the procedure I use when

17  performing randomized clothed-body searches.

18      6.    The randomized searches occur publicly in the hallway. After I randomly select an

19  inmate for a clothed-body search, first I ask for his prisoner-identification card, which CDCR

20  issues to all inmates. Then I ask the inmate to empty his pockets for the search. Then I ask the

21  inmate to place the palms of his hands against the wall.

22      7.    Next, I place one hand on the inmate's back, and leave it there for the remainder of the

23  search on the side of the inmate's body that is accessible by my free hand. My hand is anchored

24  on the inmate's back as a safety precaution, so that I can immediately notice and react if the

25  inmate begins to move. My first physical contact with the inmate occurs when my hand is placed

26  against the back.

27      8.    With my free hand, I then pat down the outside and inside of the inmate's arm, and the

28  inmate's armpit. I pat down his back from neck to waist, and then his chest from neck to waist. I

Decl. Abanico Supp. Defs.' Mot. Summ. J.                        *Cleveland v. Curry, et al.*
                                                                C 07-2809 JF (PR)

1  pat down his outer leg from hip to shoe, and then his inner leg from shoe up to the high inner

2  thigh. I pat down the inmate's rear pockets, which anatomically amounts to patting down his

3  buttocks. Finally, I pass my hand in a sweeping motion from the inner thigh across the groin, to

4  check the groin for contraband.

5     9.    Next, I will switch my anchoring hand on the inmate's back, and search the other side

6  of the inmate's body. This typical, uneventful search takes less than one minute to perform.

7     10.   But if I feel any suspicious bulges during the search, it can take more time. If I am

8  given cause for suspicion, I ask the inmate to remove his shoes. If I feel any foreign objects on

9  the body during the search, I remove and identify them if possible, and confiscate any prohibited

10 items. For instance, I have removed and confiscated a pouch of contraband tobacco from an

11 inmate's pocket during a clothed-body search.

12    11.   If, during the course of a clothed-body search, I feel a foreign object that is

13 unaccessible and under the inmate's clothing, I will call for the hall supervisor and request an

14 unclothed-body search. Unclothed-body searches are performed in a private area, rather than the

15 public hallway.

16    12.   For instance, I have felt foreign objects while sweeping my hand across an inmate's

17 groin, and requested an unclothed-body search that ultimately uncovered contraband such as

18 tobacco and tattoo ink taped between an inmate's genitals and inner thigh. Concealed weapons

19 are also uncovered during these searches.

20    13.   During an unclothed-body search, the inmate is requested to remove all his clothing. I

21 visually review the inmate's body to identify and confiscate any contraband. Next, I instruct the

22 inmate to bend over and spread his buttocks and cough, while observing the inmate's rear cavity.

23 Coughing forces out any contraband hidden in the anus. If any contraband is noticeable, the

24 inmate will be sent to medical quarters for a cavity search, which is not performed by

25 correctional officers but by medical staff.

26 //

27 //

28

Decl. Abanico Supp. Defs.' Mot. Summ. J.                          *Cleveland v. Curry, et al.*
                                                                  C 07-2809 JF (PR)

1    14. All of the body searches I have conducted while employed by CDCR have been in

2  keeping with the above description, and in accord with my training from the Training Center. I

3  conduct these searches purely as part of my job duties, to maintain the safety and security of the

4  prison by identifying and confiscating contraband. I never use these searches as a retaliatory or

5  punitive measure.

6    I declare under penalty of perjury that the foregoing is true and correct to the best of my

7  knowledge and recollection, and that this declaration was executed on March 28, 2008 at

8  Soledad, California.

9

10

11

                          Officer Abanico

12

13  40232916.wpd
    SF2007403404

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Decl. Abanico Supp. Defs.' Mot. Summ. J.                                *Cleveland v. Curry, et al.*
                                                                       C 07-2809 JF (PR)

4