F A C T S

(DEFENDANT: T. Crawford, [Senior Li~~r~an~)

ORIGINAL

# EXHIBIT  D

State of California                    **Department of Corrections and Rehabilitation**

**Date** : February 27, 2007

*MEMORANDUM*

**To** : **Whom it May Concern**

**Subject:** Inmate Cleveland, H-60545

Due to restricted space and limited operating hours, Mr. Cleveland (H60545) was not allowed adequate access to the Law Library and as a result, has missed his deadline for filing his Writ to the Supreme Court.

Sincerely,

K. Kessler
Vice Principal
Education Department
Correctional Training Facility

First Level   ☐ Granted   ☒ P. Granted   ☐ Denied   ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: **NOV 08 2006**   Due Date: **DEC 2 6 2006**

Interviewed by: _J. Drager_

_SEE ATTACHMENT_

Staff Signature: _____   Title: _V.P. Counsel_   Date Completed: _1/18/07_

Division Head Approved _____   Title: _SLEN_   Returned

Signature: _____   Date to Inmate: **JAN 23 2007**

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

The Problem Needs To Be "Fix'D" Inmates In-
cluding Inmate Cleveland C. Have Legal dead-
lines. Inmate Cleveland Did miss His Suprem
Court dead-line do to Crawford Playing Favoritism. That
should not be Allowed ever. Want this completely Granted.

Signature: _Mr. Dan Cleveland_   Date Submitted: _1-30-07_

Second Level   ☐ Granted   ☐ P. Granted   ☐ Denied   ☒ Other _Withdrawn_

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: **FEB 2 2007**   Due Date: **MAR 06 2007**

☐ See Attached Letter

Signature: _R. Kessler_   Date Completed: _2/27/07_

Warden/Superintendent Signature _____   Date Returned to Inm. **MAR 5 2007**

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Signature: _____   Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:   ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

*Second level. TO: APPEALS COORDINATOR*

*DISSATISFIED - with P- GRANTED)*

*Would - like Full GR.*

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region
1. _____ CTF-C _____
2. _____

Log No. **MAR 5 2007** Category
1. **06-03619** **10-1**
2. **JAN 23 2007**

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT. | UNIT/ROOM NUMBER |
|------|--------|-------------|------------------|
| Cleveland | H-60545 | A-1-A ) UNASSIGNED | F-W-256-UP |

A. Describe Problem: ON -10-31-06 ) INMATE Cleveland Went TO The INSTITUTIONAl LibRARY To do his Legal WORK IN Which He has A dead-line With The SUPREM COURT. MR. CRAWFORD- who is INChARGE OF RUNNING ANd SUPERVISING The LibRARY CleAReLy exercised ANd DEMONSTRATED FAVORTISM: TEN INMATES ThAT CAME AFTER INMATE Cleveland WeRE Allowed TO ENTENO The LibRARY. This is The FOURTH time ThAT MR. CRAWFORD HAS DEMONSTRATED ANd CONTINUES TO PlAy FAVORTISM.

If you need more space, attach one additional sheet. See ATTACH PG(S)

B. Action Requested: ThAT MR. CRAWFORD /STOP PlAying FAVORTISM: ANd ThAT INMATES Like INMATE Cleveland be Allowed TO GO INTO The LibRARY, ANd Do Their Legal WORK beFORE Their DEADLINE is N / / / up. - Thank-You.

Inmate/Parolee Signature: _____ Date Submitted: 10-31-06

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

**BYPASS**

Staff Signature: _____ Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

**RECEIVED**    RECEIVED

Date Submitted: _____

CDC Appeal Number:

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

NOV 8 2006

CTF APPEALS

**06-03619**

CALIFORNIA DEPARTMENT OF CORRECTIONS
CORRECTIONAL TRAINING FACILITY - SOLEDAD

### SUPPLEMENTAL PAGE

RE:    **Appeal Log No. CTF-C-06-03619**
FIRST LEVEL RESPONSE
CLEVELAND    H60545,    Central Facility, F- 256U

**APPEAL DECISION:**

*PARTIALLY GRANTED*

**ISSUE APPEALED:**

LEGAL (Category 10-1)

**ACTION REQUESTED:**

Mr. Crawford stop playing favoritism and that inmates, like inmate Cleveland, be allowed to go into the library to do their legal work before their deadline is up.

**APPEAL RESPONSE:**

During our conversation you stated your court date was missed due to being denied law library access. I have discussed your complaint with Librarian Crawford and directed him to make sure all inmates with approaching deadlines a priority-fair and equitable. He concurred. However, due to space and operating hours, some inmates may find law library access constrained.

Based on the above, your appeal is **PARTIALLY GRANTED.**

J. DREIGER, Vice Principal
Central Facility

Reviewed By
G.E. ATCHLEY, Principal
Valley Adult School
Correctional Training Facility

No. _____

_____

## IN THE

## SUPREME COURT OF THE UNITED STATES

_____

Ivan B. Cleveland _____ — PETITIONER
(Your Name)

### VS.

Gail Lewis Warden
California Department of Rehabilitation,
et, al: Theresa A. Patterson CAAG ____ — RESPONDENT(S)

## MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

The petitioner asks leave to file the attached petition for a writ of certiorari without prepayment of costs and to proceed *in forma pauperis*.

[  ] Petitioner has previously been granted leave to proceed *in forma pauperis* in the following court(s):

_____

_____

[XX] Petitioner has **not** previously been granted leave to proceed *in forma pauperis* in any other court.

Petitioner's affidavit or declaration in support of this motion is attached hereto.

_____
(Signature)

# TABLE OF CONTENTS

OPINIONS BELOW...................................................................................................... 1

JURISDICTION ............................................................................................................

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED ....................................

STATEMENT OF THE CASE ...........................................................................................

REASONS FOR GRANTING THE WRIT ...........................................................................

CONCLUSION ..............................................................................................................

# INDEX TO APPENDICES

APPENDIX A    Opinion of The United States Court of Appeals:
For The Ninth Circuit (Certificate of Appealability). (No-055217) D.C.
No. CV-03-01718-AHM) Central District of (California, Los Angeles)
Filed May 25, 2006 Denied.

APPENDIX B    Order by Judge A. Howard matz (Denying Petition For Issuance of Certificate
Of Appealability. Petition For Certificate of Appealability [41]. (qhap.)
entered: 2-11-2005

APPENDIX C    Judgement by Judge A Howard matz: It is adjudged that the Petition For Writ
of Habeas Corpus is denied and this action is dismissed with prejudice:
Related to: Petition For Writ of Habeas Corpus [1] (MD JS-6 case terminated.)
(dw.) Entered: 01/04/2005

APPENDIX D    4/04/03 Petitioner's Request to proceed in forma pauper's, filed 3/11/03
is Denied by Magistrate Judge Jeffrey W. Johnson CR: None appearing (pbap)
Entered: 4/11/03.

APPENDIX E    See Exhibit (C)
(U.S. District Court:)
Central District of California (Western Division-Los Angeles, Civil Docket
for Case# 2:3-CV-01718-AHM-JWJ. (1-44) (Dates-Filed; and Denied 3/11/03 to

APPENDIX F    5-25-06

IN THE

SUPREME COURT OF THE UNITED STATES

PETITION FOR WRIT OF CERTIORARI

Petitioner respectfully prays that a writ of certiorari issue to review the judgment below.

## OPINIONS BELOW

[x] For cases from **federal courts**:

The opinion of the United States court of appeals appears at Appendix __A__ to the petition and is

[ ] reported at _____, or.
[ ] has been designated for publication but is not yet reported; or,
[xx] is unpublished.

The opinion of the United States district court appears at Appendix __D__ to the petition and is

[ ] reported at _____; or.
[ ] has been designated for publication but is not yet reported; or,
[xx] is unpublished.

[ ] For cases from **state courts**:

The opinion of the highest state court to review the merits appears at Appendix ____ to the petition and is

[ ] reported at _____; or,
[ ] has been designated for publication but is not yet reported; or,
[ ] is unpublished.

The opinion of the _____ court appears at Appendix ____ to the petition and is

[ ] reported at _____; or,
[ ] has been designated for publication but is not yet reported; or,
[ ] is unpublished.

## AFFIDAVIT OR DECLARATION
## IN SUPPORT OF MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

I, Ivan B. Cleveland _____, am the petitioner in the above-entitled case. In support of my motion to proceed *in forma pauperis*, I state that because of my poverty I am unable to pay the costs of this case or to give security therefor; and I believe I am entitled to redress.

1. For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
| --- | --- | --- | --- | --- |
| | You | Spouse | You | Spouse |
| Employment | $ N/A | $ N/A | $ N/A | $ N/A |
| Self-employment | $ $0.00 | $ N/A | $ $0.00 | $ N/A |
| Income from real property (such as rental income) | $ $0.00 | $ N/A | $ $0.00 | $ N/A |
| Interest and dividends | $ $0.00 | $ N/A | $ $0.00 | $ N/A |
| Gifts | $ $0.00 | $ N/A | $ $0.00 | $ N/A |
| Alimony | $ $0.00 | $ N/A | $ $0.00 | $ N/A |
| Child Support | $ $0.00 | $ N/A | $ $0.00 | $ N/A |
| Retirement (such as social security, pensions, annuities, insurance) | $ $0.00 | $ N/A | $ $0.00 | $ N/A |
| Disability (such as social security, insurance payments) | $ $0.00 | $ N/A | $ $0.00 | $ N/A |
| Unemployment payments | $ $0.00 | $ N/A | $ $0.0.. | $ N/A |
| Public-assistance (such as welfare) | $ $0.00 | $ N/A | $ $0.00 | $ N/A |
| Other (specify): _____ | $ $0.00 | $ N/A | $ $0.00 | $ N/A |
| **Total monthly income:** | $ $00.00 | $ N/A | $ $00.00 | $ N/A |

2. List your employment history for the past two years, most recent first.   (Gross monthly pay is before taxes or other deductions.)

| Employer | Address | Dates of Employment | Gross monthly pay |
|---|---|---|---|
| N/A | Soledad Prison | N/A | $ N/A |
| | | | $ |
| | | | $ |

3. List your spouse's employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)

| Employer | Address | Dates of Employment | Gross monthly pay |
|---|---|---|---|
| N/A | | | $ |
| | | | $ |
| | | | $ |

4. How much cash do you and your spouse have? $_____
Below, state any money you or your spouse have in bank accounts or in any other financial institution.

| Financial institution | Type of account | Amount you have | Amount your spouse has |
|---|---|---|---|
| State Prison Account | | $ N/A | $ N/A |
| | | $ | $ |
| | | $ | $ |

5. List the assets, and their values, which you own or your spouse owns.  Do not list clothing and ordinary household furnishings.

☐ Home
   Value ____40.00____

☐ Other real estate
   Value ____$0.00____

☐ Motor Vehicle #1
   Year, make & model ____$0.00____
   Value _____

☐ Motor Vehicle #2
   Year, make & model ____$0.00____
   Value _____

☐ Other assets
   Description ____$0.00____
   Value _____

6. State every person, business, or organization owing you or your spouse money, and the amount owed.

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| None | $ $0.00 | $ N/A |
| | $ | $ |
| | $ | $ |

7. State the persons who rely on you or your spouse for support.

| Name | Relationship | Age |
|---|---|---|
| None   N/A | N/A | N/A |
| | | |
| | | |

8. Estimate the average monthly expenses of you and your family.   Show separately the amounts paid by your spouse.   Adjust any payments that are made weekly, biweekly, quarterly, or annually to show the monthly rate.

| | You | Your spouse |
|---|---|---|
| Rent or home-mortgage payment (include lot rented for mobile home)  Are real estate taxes included?  ☐ Yes  ☐ No  Is property insurance included?  ☐ Yes  ☐ No | $ 0.00 | $ 0.00 |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ 0.00 | $ N/A |
| Home maintenance (repairs and upkeep) | $ 0.00 | $ N/A |
| Food | $ 0.00 | $ N/A |
| Clothing | $ 0.00 | $ N/A |
| Laundry and dry-cleaning | $ 0.00 | $ N/A |
| Medical and dental expenses | $ 0.00 | $ N/A |

|                                                                                      | You       | Your spouse |
|--------------------------------------------------------------------------------------|-----------|-------------|
| Transportation (not including motor vehicle payments)                                | $ 0.00    | $ N/A       |
| Recreation, entertainment, newspapers, magazines, etc.                               | $ 0.00    | $ N/A       |

Insurance (not deducted from wages or included in mortgage payments)

|                          | You       | Your spouse |
|--------------------------|-----------|-------------|
| Homeowner's or renter's  | $ 0.00    | $ N/A       |
| Life                     | $ 0.00    | $ N/A       |
| Health                   | $ 0.00    | $ N/A       |
| Motor Vehicle            | $ 0.00    | $ N/A       |
| Other: _____N/A_____     | $ 0.00    | $ N/A       |

Taxes (not deducted from wages or included in mortgage payments)

|                                 | You       | Your spouse |
|---------------------------------|-----------|-------------|
| (specify): _____None_____       | $ 0.00    | $ N/A       |

Installment payments

|                          | You       | Your spouse |
|--------------------------|-----------|-------------|
| Motor Vehicle            | $ 0.00    | $ N/A       |
| Credit card(s)           | $ 0.00    | $ N/A       |
| Department store(s)      | $ 0.00    | $ N/A       |
| Other: _____None_____    | $ 0.00    | $ N/A       |
| Alimony, maintenance, and support paid to others | $ 0.00 | $ N/A |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | $ 0.00 | $ N/A |
| Other (specify): __NONE__ | $ 0.00   | $ N/A       |
| **Total monthly expenses:** | $ 0.00 | $ N/A      |

9. Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?

    ☐ Yes    ☒ No        If yes, describe on an attached sheet.

10. Have you paid – or will you be paying – an attorney any money for services in connection with this case, including the completion of this form?    ☐ Yes    ☒ No

    If yes, how much? _____

    If yes, state the attorney's name, address, and telephone number:

11. Have you paid—or will you be paying—anyone other than an attorney (such as a paralegal or a typist) any money for services in connection with this case, including the completion of this form?

    ☐ Yes    ☒ No

    If yes, how much? _____

If yes, state the person's name, address, and telephone number:

    As previously stated, I am serving a prison sentence.  I have no income, other then the money I may receive from family or friends.  I am poor

12. Provide any other information that will help explain why you cannot pay the costs of this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:    _____ , 20

                                                    _____
                                                    **(Signature)**
                                                    Ivan B. Cleveland

                                                    In Pro Se

## JURISDICTION

[x] For cases from **federal courts**:

The date on which the United States Court of Appeals decided my case was May 25, 2006 _____.

[ ] No petition for rehearing was timely filed in my case.

[ ] A timely petition for rehearing was denied by the United States Court of Appeals on the following date: _____ _____, and a copy of the order denying rehearing appears at Appendix _____.

[ ] An extension of time to file the petition for a writ of certiorari was granted to and including_____(date) on _____ _____(date) in Application No. A-_____.

The jurisdiction of this Court is invoked under 28 U.S.C. § 1254(1).

[xk For cases from **state courts**:

The date on which the highest state court decided my case was _____. A copy of that decision appears at Appendix _____.

[ ] A timely petition for rehearing was thereafter denied on the following date: _____ ____, and a copy of the order denying rehearing appears at Appendix _____.

[ ] An extension of time to file the petition for a writ of certiorari was granted to and including _____(date) on _____(date) in Application No. A-_____.

The jurisdiction of this Court is invoked under 28 U.S.C. § 1257(a).

No. _____

_____

IN THE

SUPREME COURT OF THE UNITED STATES

_____

Ivan B. Cleveland _____        — PETITIONER

(Your Name)

VS.

·Gail Lewis Warden
California Department of Rehabilitation,
et, al. Theresa A Patterson   CAAG        — RESPONDENT(S)

_____

ON PETITION FOR A WRIT OF CERTIORARI TO

UNITED STATE COURT OF APPEAL FOR THE NINTH CIRCUIT
(NAME OF COURT THAT LAST RULED ON MERITS OF YOUR CASE)

PETITION FOR WRIT OF CERTIORARI

Ivan B. Cleveland  H-60545 _____

(Your Name)

POST BOX 689 FW-256U _____

(Address)

SOLEDAD, CALIFORNIA 93960-0689·

(City, State, Zip Code)

_____

(Phone Number)

IN THE

SUPREME COURT OF THE UNITED STATES

Ivan B Cleveland _____    — PETITIONER

(Your Name)

VS.

Gail Lewis Warden
California Department of Rehabilitation
et, al Thresa A. Patterson    — RESPONDENT(S)
_____

## PROOF OF SERVICE

I, Ivan B. Cleveland _____, do swear or declare that on this date, _____,19____, as required by Supreme Court Rule 29 I have served the enclosed MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* and PETITION FOR A WRIT OF CERTIORARI on each party to the above proceeding or that party's counsel, and on every other person required to be served, by depositing an envelope containing the above documents in the United States mail properly addressed to each of them and with first-class postage prepaid.

The names and addresses of those served are as follows:

BILL LOCKYER

ATTORNEY GENERAL OF THE STATE OF CALIFORNIA

455 GOLDEN GATE AVE #11000

SAN FRANCISCO, CALIF 94102

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____, 19____

_____
(Signature)

## CONCLUSION

The petition for a writ of certiorari should be granted.

Respectfully submitted,

_____

Ivan B. Cleveland

Date: _____

## TABLE OF AUTHORITIES CITED

PAGE NUMBER

CASES

COOPER v. OKAHOMA,                           116 S.Ct. 1373  (J1993)

DUSKY v. UNITED STATES                       362 U.S. 402 (1960)

REYNOLD v. NORRIS                            86 F. 3d 796 (8th cir 1996)

UNITED STATE v. SOLDEVIIA LOPEZ              17 F. 3d 480 (1st Cir 1994)

JAME v. SINGLETARY                           957 F.2d 1562 (11th Cir 1992)

UNITED STATE v. HOSKIE                       950 F. 2d 1388 (9th Cir 1991)

HULL v. FREEMAN                              932 F. 2d 159 (3d Cir 1991)

UNITED STATES v.RENFROE                      825 F. 2d 763 (3d Cir 1987)

UNITED STATES EX REL. SEC. v. BILLINGSLY  766 F 2d. 1015 (7th Cir 1985)

SILVERTEIN v. HENDERSON                      706 F. 2d (2d Cir 1983)

SPEEDY v. WYRICH                             702 F.2d 723 (8th Cir 1983)

UNITED STATE EX REL BILYEW v. FRANZEN  686 F.2d 1238 (7th Cir 1982)

MARTIN v. ESTELLE                            583 F.2d 1373 (5th Cir 1978)

UNITED STATES v. IVES                        574 F.2d 1002 (9th Cir 1978)

BRUCE v. ESTELLE                             536 F. 2d 1051 (5th Cir  1976)

UNITED STATE v. VEATCH                       854 F. Supp 480 (W.D. ORL 1993)

UNITED STATES v. PEREZ DIAZ                  797 F. Supp 81 (D. Puerro Rico 1992)

MEEK v. SMITH                                512 F. Supp 335 (D.N.C. 1981)

### STATE CASES

PEOPLE v. JOHNSON               659 N.E. 2d 22 (111. App Ct. 1995)

PEOPLE v. GUTTIEREZ             648 N.E. 2d 928 (111. App Ct. 1995)

PEOPLE v. BRANDON               643 N.E. 2d 712 (111. 1994)

STATE v. LAMBERT                645 A. 2d. 1189 (N.J. Super Ct App Div. 1994)

## STATE CASES

| | |
|---|---|
| PEOPLE v. SMART | 184 A.D. 2d 341 585 N.Y. S 2d 346 (N.Y. APP. DIV 1992) |
| PEOPLE v. MEURER | 184 A.D. 2d 1067 584 N.Y. S 2d 370 (N.Y. APP.DIV 1992) |
| BOGGS v. STATE | 575 So 2d. 1214 (Fla. 1991) |
| UNRUH v. STATE | 560 S. 2d 266 (Fla Dist Ct App. 1990) |
| HILL v. STATE | 788 S. W. 2d 858 (Tex. Ct. App. 1990) |
| JACOBS v. STATE | 744 S. W. 2d 728 (Ark 1988) |
| HOLLOWAY v. STATE | S.E. 2d 794 (G.A. 1987) |
| BARBER v. STATE | 737 S.W.2d 824 (Tex. Crim App. 1986) |
| PEOPLE v. O'REILLY | 125 A.D. 2d 879, 510 N.Y S 2d 375 (N.Y. App. Div 1986) |
| WILLIAMS v. STATE | 663 S.W. 2d 832 (Tex Crim App, 1984) |
| POYNTER v. STATE | 443 S.. 2d 219 (Fla, Ct. App. 1984) |
| PEOPLE v. ARCADIC | 692 P. 2d 1154 (Colo Ct. App 1984) |
| BAKER v. STATE | 297 S.E. 2d. (G.A. 1982) |
| EXPARTE TURNER | 626 S.W. 2d. 785 (Tex. Crim App. 1984) |
| STATE v. ROGERS | 419 So. 2d. 840 (LA. 1982)(Interlocutory Appeal) |
| STATE v. BLAIR | 273 S.E. 2d 536 (S.C. 1981) |
| SISCO v. STATE | 599 S.W. 2d 607 (Tex Crim App. 1980) |
| STATE v. HAMILTON | 373 So. 2d 179 (LA. 1979) (Interlocutory Appeal) |
| HILL v . STATE | 369 A. 2d 98 (M.D. Ct. Spec. App. 1977) |
| PEOPLE v. SALVAGGIO | 348 N.E. 2d 243 (111 App. Ct. 1976) |

## CAPITAL CASES:

| | |
|---|---|
| SEILDEL v. MERKL | 146 F. 3d. 750 (9th Cir. 1998) Cert Denied U.S. 1850 (1990) 119 Ct. |

## U.S. DISTRICT COURT CASES

| | |
|---|---|
| HILL v. LOCKAHRT | 28 F. 3d. 832 (8th Cir 1994) Cert Denied 513 U.S. 1995) 1102 (AFFIRMING 824 F. Supp. 1327 (E.D. Ark 1993) |

## STATEMENT OF FACTS

Dr. Kowell, a Neurologist, conducted a neurological consulation on the Petitioner. An EEG test revealed evidence of disfunction, in the frontal lobe of petitioner's brain on both sides (R.T. 1816-1822, 1842-1848.) . . . Dr. Kowell opined the petitioner's thought processes were significantly impaired and he [petitioner] **"Was Not Malingering Or Feigning A Mental Illness.** (R.T. 1819-1823)(R.T. 1847-1848.)

A review of the petitioner's emergency room medical records of February 16,1998, reveals that the petitioner may have suffered a seizure and was under the influence of 1). Amphetamine, 2). Cocaine, 3). Nicotine, 4). Methamphetamine, and 5). Marijuana on February 16,1998. (R.T. 1823-1840.) Dr. Kowell also conducted a physical examination of the petitioner, and found no indication that petitioner had asthma.

Petitioner was also examined by Dr. Michael Perrotti, a Psychologist Expert. Dr. Perrotti examined petitioner for approximately 3 1/2 hours on two occasions (R.T. 2430.) Dr. Perrotti tetified in court that his findings were "similar" to Dr. Kowells' findings. (R.T. 2434.) Dr. Perrotti's conclusion in his examination of the petitioner was that petitioner suffered from frontal lobe damage in his brain that range from "Moderate" to "Severe" and that petitioner had bilateral damage on both sides of his brain. (R.T. 2457.)

Also, the Reporters Transcripts shows the court actually stayed the sentence in count "11" pursuant to Penal Code sec.

The Petitioner under went Psychological evaluation by a "Harry Taylor" III" Ph.D on the day of 5-11-98. Also In Exhibit (b) Dr. Harry Taylor noted the following.  Dr Taylor Indicated that it was clear that the patient/Petitioner presented serious signs and symtoms of [gross mental illness].  Petitioner thinking was confused with the presence of auditory (Hallucinations ). and affect was inappropriately marked by "Depression" Dr. Taylor also noted that patient/Petitioner affect was inappropriate with emotional lability marked by "Depression" Dr. Taylor also noted that patient (Petitioner memory was "vague." The patient/Petitioner affect was inappropriate with emotional lability marked by "Distress, Tears, and incoherence". Dr. Harry Taylor also noted that patients affect vacillated and mood swings were "Evident." The Patient/Petitioner stated that he had a history of Psychiatric "Hospitalization." The Patient/Petitioner did not know the following. (1). The patient did not know the name of his :Attorney" (2). He was very disoriented to time and place." (3). He was confused and affect." (4). He had command hallucinations telling him to kill himself. (5). His recall of significant dates and backgrounds data was impared. (6). He did not know the details of his criminal allegations: (7). Patient/Petitioner was clearly unable to cooperate with his attorney: (8). He was to satifactorily respond to many of Dr. Taylors questions: (9). The "Petitioner" be Mr. Cleveland was on Psychotropic medication. Which was stated that he had not received on a reqular basis. Dr. Taylor indicated that the Patient/Petitioner was viewed as "Incompetent" to stand trial at that time.

The court erred in not granting hearing on question of defendants competency to stand trail and to be sentence when during the course of the sentencing hearing. Evidence was presented that defendant suffered a 16-year addiction to cocaine that in the opinion of experts, interfered with the ability to cooperate with his attorney. and defendants attorney testified that defendant forbabe him from using drug abuse as a defense during trail. Remanded for court to determine if a meaningful "None Pro Tune" hearing was still possible.

For disposition on remand: [United State v. Remfroe] 825 F. 2d 763 (3d Cir 1987) See United States v. Renfroe. 745 Supp. 203 (D. Del 1990) Also state placing the burden on the defendant to prove incompetence is uncontitutional. The misallocation of the burden was not harmless error since competency was a close question; "Three" experts in "Petitioner" case being "Dr. Kowell A Neurolgist." "Dr. Perrotti" a "Certified Forensic Expert" and "Dr. Harry Taylor" a psychiatrist who has a 111 P.hD found the defendant "Unfit to stand trail" one expert for the state by the name of Dr. Ronald markman who interviewed petitioner on "6-30-98" testified that petitioner was malingering after he admitted to spending less then ten minutes with the defendant. He also admitted to only asking the defendant two questions "see exhibit (b) that remands for determination whether a retrospective hearing would be meaningful. In [Medina v. California] 112 S.Ct. 2572 (1992).

## FACTS:

A defendant is not competent and "may not be put to trail. unless he or she has (1) Sufficent present ability meaningfully to consult with he or she counsel and participates in the defense. and (2) a rational as well as factual understanding of

15

the proceedings. Although a state may place upon the defendant the burden of proving his or her own incompetense. If my not set a standard of proof higher than a preponderance of the evidence rising a bono fide doubt as to defendants competency a trail court must "clearly" conduct a hearing on the issues. The right at state is so fundamental tht it merits protection even if the defendant has failed to make a timely request for a competency determination. Furthermore the trail court has a duty to address the issue sursponte . If the facts warrant it and under such circumstances the failure of defense counsel to request a hearing or object to the denial or one will not operate as procedural bar to challenging the violation in post conviction proceedings. [Cooper v. Oklahoma supra]. A remendy for the trail of an incompetent defendant is a new trail [James v. Singletary]. (11th Cir 1992) 957 F. 2d 1562).

The state trail counsel exhibited defiction performance at a cometency hearing when failed to bring two colleagues of the expert disagree with his conclusion that the defendant was fit to stand trail. Remand for clarification of district court findings as to prejudice. The court improperly placed the burden on the defendant to prove his competence. Since lay and expert testimony on defendants competence was closely divide. There is reasonable possibility that defendant would have been found "unfit" under a proper allocation of the burden of "Proof". Remanded for court to determine if a meaningful retrospective hearing. "Note: The court appears to base its holding on the view. Later reject by the U.S. Supreme Court in [Medina v. California]. 112 S. Ct 2572 (1992). That it is unconstitutional to place the burden of proof on the defendant: In view of undisputed facts that Petitioner had a IQ of 84 and mental age of a seven year old. Had long institutional

16.

history and two psychiatrist found petitioner incompetent.  Failure to order competence hearing sua sponte violated right to fair trail.  Even though a third Psychiatrist found the petitioner competent based on a very brief evaluation.  When a trail court "Neglects it duty" to conduct a hearing on competence.

## STATEMENT OF THE CASE

Petitioner Ivan B. Cleveland was harged in and indictment with attempted second degree Robbery (Pen. Code 664/211) in counts 1 and 8 assault with a firearm (Pen. Code 245 (a)(2) with personal use of a firearm (Pen. Code 12022.5)(a)(1)    In counts    2 and 12 second degree commercial burglary (Pen. Code 459) with persona use of a firearm (Pen Code 12022.5)(a)(1) in counts 3 and 11.    Carjacking (Pen Code 215 (a) with personal use of a deadly and dangerous weapon (Pen. Code 12022 (b)(2) in count 4 and 6. Carjacking (Pen. Code 215 deadly weapon by means of force likely to produce great bodily and dangerous weapon (Pen. Code 12022 (b)(2) in count 5 evading an officer with willlful disregard (Veh. Code 2800.2) In Count 7 and 15. second degree robbery (Pen. Code 211) with personal use of a firearm (Pen. Code 12022.5)(a)(1) 12022.53 (a)(1) in count 10 false imprisonment by violence (Pen. Code 236) with personal use of a firearm (Pen. Code 12022.5 (a)(1).    In count 13. Possession of a firearm by an exfelon (Pen. Code 12021)(a)(1) In count 16 (Ct. 232-240) at this arraignment petitioner plead not quilty and denied the further allegations (Ct. 246-247). At the conclusion of prosecutions case in chief, petitioner's motion for acquittal (Pen. Code 1118.1) was granted as to count 5 (Pen. Code 245)(a)(1) 12022 (b)(2) but denied as to all other counts. (Ct 305.) Following a 14 day jury trail. Petitioner was covicted of attempted second degree robbery (P.C. 459) with personal use of a firearm (P.C. 120225)(a)(1) in count 3 and 11 carjacking (P.C. 215)(a) with personal use of a firearm (P.C. 12022.5)(a)(2) 12022.53(b) in count 14. evading an officer with willful disregard (Veh. Code 2800.2).    In count 7 and 15, second degree robbery (Pen. Code 211) with persona use of a firearm by an ex-felon (P.C. 12021) (a)(1) in count 15. (Ct 388-402)

after denyiung his prior "stikes" conviction. The court sentence petitioner to 39 years for the base term in count 14. Plus 2 years 8 months for count 1. plus 3 years 4 months for count 4, plus 1 year 4 months for count 8. plus 2 years for count 10 plus 5 years for the prior felony conviction. (Ct 499-500). The court imposed concurrent sentences on counts 2, 6, 12, 13 , and 16. And stayed the sentences on counts 3, 9, 11. Pursuant to Pen Code sec 654 Ct 500-501 Rt 3947) Petitioner was given credit for 827 days spent in custody including 719 actual days and 108 good time/work time credits (Ct 492. 501) Petitioner filed a timely notice of appeal from the judgement of conviction and sentence (Ct. 502).

## IN CONCLUSION

In Conclusion, The Petitioner would ask that the court understands that e competency is not a matter that is decided once and for all. Even if the defendant was found competent at a pre-trail hearing. The trail court has a duty to convence a second hearing if present with new evidence rising a bona fide doubt of competency at any subsequent stage of the trial. (see e.g.. Reynolds v. Norris, 86. F. 3d. 796 (8th Cir. 1996).

The trail court should have interputed trail proceedings for competency hearing though defendant had been found competent at the pre-trail hearing. The State Court nor the Government did not meet the bruden of demonstrating defendant had a verbal (IQ of approximately - 74) and a (Performance IQ of - 79) and also a (Full scale IQ of - 76) all three are considered to be where defense experts testified that defendant was (Incompetent). Where government expert focused too narrowly on "Competency".

Physical examination of Petitioner and found no indication that Petitioner had asthma. (RT 3009-3010.)

Dr. Michael Perrotti, a Psychologist, evaluated Petitioner and found Petitioner had brain damage which affected his reasoning and judgment, ability to control his impulses, and ability to control his behavior. (RT 2442-2459, 2473-2474, 2734.) Dr. Perrotti explained that Petitioner's ingestion of narcotics impacted Petitioner's already damaged frontal lobe brain functioning and worsened his behavior. (RT 2444-2447, 2551, 2743-2744.) Dr. Perrotti also explained that he had found the Petitioner's IQ level was below average, and that his findings were similar to what Dr. Kowell had found. (RT 2434.) Dr Perrotti also gave information that the Petitioner's outcome of the test given by him were similar to individuals with brain damage that he has seen over the last 20 to 25 years. (RT 2434.)

Dr. Perrotti opined that the Petitioner had frontal lobe damage in his brain that was in the range of moderate to sever, and that his findings were consistent with Dr. Kowell's.

(Dr. Perrottis's Report is attached as Exhibit A)

(Dr. Kowell's Report is attached as Exhibit B)

//

//

//

I

## CALIFORNIA JURY INSTRUCTION CALJIC. No. 17.41.1 IS UNCONSTITUTIONAL.
## THE DISTRICT COURT ERRED IN DECIDING CLAIM ONE

The authority cited by respondent and relied upon by the Magistrate Judge, although proper authority, is misapplied to the issue at hand. Most jury instructions are balanced. They instruct the jury on how to evaluated the case at hand, such as evaluating evidence, witnesses and the elements of the charged offense. The balance is usually in the form of definitions to words and the meaning of phrases. However, in the instruction given in CALJIC. No. 17.41.1 this is not so. This instruction is directed at the jurors themselves. Not on how to evaluate the case, but on evaluating each other. Yet there is no balance to explaining to the jurors what "any other improper basis" is. After much thought, Petitioner has come to the conclusion that this is an "anti-jury nullification instruction." The concerning part of this is that it is given without the nullification instruction.

The jury charge in this case, for the most part, accurately stated well established law in advising jurors of their duty to follow the court's instructions, to decide the case based on their individual opinions, and not be swayed by improper influences. Then the court injected CALJIC No. 17.41.1, admonishing jurors to report any misconduct, that is , any other

improper basis that any other juror believed to be wrong, substantially affecting the secrecy or uninhibited nature of proper deliberations. [Emphasis Added]

""Freedom of debate," as Justice Cardozo wrote, "might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world." Clark v. United States, Supra, 289 US at 13; also see United States v. Antar, 38 F.3d 1348, 1367 (3d Cir. 1994)(Rosenn, J., concurring)("We must bear in mind that the confidentiality of the thought processes of jurors, their privileged exchange of views, and the freedom to be candid in their deliberations are the soul of the jury system."); In re Globe Newspaper Co., 920 F.2d 88, 94 (1st Cir. 1990)("It is undisputed that the secrecy of jury deliberations fosters free, open and candid debate in reaching a decision."); Abraham S. Goldstein, Jury secrecy and the Media: The Problem of Postverdict Interviews, 1993 U.ILL. L. Rev. 295, 295 ("[J]urors must deliberate in secret so that they may communicate freely with one another, secure in the knowledge that what they say will not be passed along to others."); Benjamin S. DuVal, Jr., *The Occasions of Secrecy*, 47 U.PITT. L. REV. 579, 646 (1986) ("The secrecy of the jury room, like that of the Supreme Court conference, is designed to promote the free and candid interchange of views.")...

22.

...."The        jury        system incorporated in our Constitution by the Framers was not intended to satisfy yearning for perfect knowledge of how a verdict is reached, nor to provide assurances to the public of the primacy of logic in human affairs. Nor was it subordinated to a 'right to know' found in the First Amendment. The jury as we know it is *supposed* to reach its decisions in the mystery and security of secrecy; objections to the secrecy of jury deliberations are nothing less than objections to the jury system itself."" [Emphasis Added], **U.S. v. Thomas, supra, at 619.**

Respondent contends that "Nothing in the instant record indicates that any problem arguably attributable to CALJIC No. 17.41.1 - such as coercion of holdout jurors, stifling of debate, intrusion into jury deliberations, or attempt to nullify the law -- occurred during deliberations." (Respondent's Answer p.10-11).

Petitioner contends that all of the above occurred. The greatest evidence of this is, despite overwhelming evidence that Petitioner was incompetent to stand trial, the jury found him guilty of all charges. (See Ground 2).

Petitioner will stand on the position that the only way that CALJIC 17.41.1 can be found to be proper and constitutional is that it be given with an instruction of jury nullification.

Contrary to the mandates of well established and constitutional grounded judicial precedent, as well as legislative prohibition contained in California Evidence Code section 1150, CALJIC No. 17.41.1 improperly permits the trial courts to hear reports of jurors' subjective mental processes. Additionally, by encouraging jurors to report minority or hold out jurors to the possible end that they may be removed from the panel, the instruction impinges upon a criminal defendants rights to a unanimous verdict and violates his or her state and federal right to due process. **People v. Wheeler (1978) 22 Cal. 3d 258, 265; Apodaca v. Oregon (1972) 406 US 404.**

The Magistrate's conclusion that "petitioner has not shown that the United States Supreme Court has ever held that the use of an instruction advising jurors to report incidents of juror misconduct violates the federal constitution" (See Mag. R&R at p.10) is true, but that is only because the Supreme Court has never heard a case with a jury instruction issue as presented here.

California jury instruction CALJIC. No. 17.41.1 is unique and contrary to and an unreasonable application of clearly established Federal law, as Petitioner has demonstrated.

The instant jury trial conviction must be reversed and a new trial granted.

24.

REASONS FOR GRANTING THE PETITION

GROUNDS FOR RELIEF

GROUND 1:

CALIFORNIA JURY INSTRUCTION CALJIC. No. 17.41.1 IS
UNCONSTITUTIONAL
THE MAGISTRATE ERRED IN EVALUATION CLAIM ONE

GROUND 2

THE TRIAL COURT ERRED IN ALLOWING THE PETITIONER TO
STAND TRIAL WHEN THERE WAS OVERWHELMING EVIDENCE THAT
PETITIONER WAS INCOMPETENT TO STAND TRIAL.
THE MAGISTRATE ERRED IN DECIDING CLAIM TWO.

II

## THE TRIAL COURT ERRED IN ALLOWING THE PETITIONER TO STAND TRIAL WHEN THERE WAS OVERWHELMING EVIDENCE THAT PETITIONER WAS INCOMPETENT TO STAND TRIAL. THE DISTRICT COURT ERRED IN DECIDING CLAIM TWO. (PETITION GROUND SIX)

The State Court of Appeals decision on this issue was contrary to and an unreasonable application of clearly established United States Supreme Court precedents.

The trial court erred in this case when it allowed the petitioner to stand trial, when there was overwhelming evidence beyond a reasonable doubt that petitioner was incompetent to stand trial. Petitioner in this case was examined by three doctors to determine if petitioner was competent. Two of the three doctors, who spent adequate time evaluating petitioner found petitioner to be incompetent to stand trial, and both their finding were consistent with the others.

"A person cannot be tried or adjudged to punish while that person is mentally incompetent." Cal. Penal Code section 1367.

In the instant case, Petitioner was given a psychiatric 'evaluation' by Dr. Ronald Markman, a psychiatry specialist, and witness for the prosecution. Dr. Markman conducted what he called an evaluation of petitioner on June 30, 1998. This 'evaluation' lasted a total of thirty (30) minutes at the most. During this mere thirty minute evaluation, Dr. Markman (by his own given testimony) failed to take any documentation of the

27.

petitioner's answers, or comments given by petitioner during this one and only thirty minute evaluation. (RT 2292.) Even after petitioner informed Dr. Markman the he was currently taking Psychotropic medication, the doctor made no attempt, nor any effort to obtain petitioner's medical records or history by either court order, or by a signed consent from petitioner. (RT 2294.) Dr. Markman spent a mere half an hour with petitioner before he formed his opinion, which is not sufficient time to provide a meaningful opinion. Dr. Markman should have not been allowed to give testimony during petitioner's trial. In California the courts have found that "the trial court did not abuse it's discretion in <u>refusing</u> to allow [psychiatrist] to testify as to his impression, because he spent a mere thirty minutes evaluating defendant." **People v. Coleman (1969) 71 Cal. 2d 1159, 1167, 80 Cal. Rptr. 920; People v. James (1989) 208 Cal. App. 3d 1155, 256 Cal. Rptr. 661.**

In the present case, Dr. Markman himself gave testimony during trial that a one contact evaluation is difficult to draw any conclusion on malingering, and it's better to make an assessment over "a long period of time, more than once, over an extended period." (RT 2415.)

Respondent is correct in alleging that "the record on appeal did not include the transcript of the trial court's ruling regarding Petitioner's competency to stand trial and did

28.

not include Dr. Markman's report." (Resp. Ans. p. 15) Therefore, it is only reasonable that petitioner, being incompetent, was also unable to provide this part of the record. However, Petitioner did provide the other evaluation reports of Dr. M. Perrotti and Dr. Kowells. (See Exhibits A and B respectively.)

In the instant case, petitioner was given an evaluation by Dr. M. Perrotti a Psychologist specialist, in December 1998 and January 9, 1999. Dr. Perrotti gave testimony during trial that he found Petitioner to have frontal lobe damage on both sides of his brain that was in the range of Moderate to Severe, and that his findings were consistent with Dr. Kowells. (RT 2457) Dr. Perrotti spent any where from 15 to 20 hours evaluating petitioner and gave testimony during trial that there was "No Malingering of the Petitioner during his evaluation." (RT 2439). This puts Dr. Perrotti well within the range of having spent adequate time evaluating petitioner. (See attached Exhibit A).

Petitioner was also given a evaluation by Dr. Kowells who is an Expert Neurologist, certified by the American Board of Psychiatry since 1980. Dr. Kowell gave information that he obtained and reviewed about petitioner's Trauma history, Education history, and Drug history. (RT 1809) Dr. Kowell gave information that his findings of the petitioner were as follows:

Defendant has a history of substance abuse, this includes on the date of February 16, 1998, in which the Hunting Memorial

hospital records will show evidence that on February 16, 1998, defendant was under the influence of amphetamine, cocaine, benzoylecgonine, nicotine, methamphetamine and cocaine. Thus, the hospital records themselves, revealed that defendant was under a control substance and suffers from a serious brain disjunction, which is a mental disorder, which is clear proof that the defendant is not competent to stand trial, and was clearly not of a sane mind on February 16, 1998. (Attached Exhibit B.)

In the present case, once the defense and the prosecution indicated that there would be testimony regarding Petitioner's mental competency, the trial court was obligated to hold a hearing as to petitioner's competency pursuant to Ca. Penal Code section 1368.

Ca. Penal Code section 1368 states in part: "... At the request of the defendant or his or her counsel or upon its own motion, the court shall recess the proceedings for as long as may be reasonably necessary to permit counsel to confer with the defendant and to form an opinion as to the mental competence of the defendant at that point in time."

The trial court in this case failed to do so.

"The failure to observe procedures adequate to protect a defendants right not to be tried or convicted while incompetent to stand trial deprives him of his due process rights to a fair trial. In other words, due process does not simply forbid the state to try and convict a person who is incompetent, it also demands adequate anticipatory protective procedures to minimize the risk that an incompetent person will be convicted." **Pate v. Robinson, (1966) 383 US 375, 86 S Ct at 838.**

"Due process prohibits the criminal prosecution of a defendant who is not competent to stand trial, and the state must provide procedures for determining the defendant's competence. **Medina v. California, 505 US 437, 449** [](1992) (citing **Drope v. Missouri, 420 US 162, 172-73** [](1975), and **Pate v. Robinson 383 US 375, 386** [](1966)). A state trial judge must conduct a competency hearing, regardless of whether defense counsel requests one, whenever the evidence before the judge raises a bona fide doubt about the defendant's competence to stand trial. **Odle v. Woodford, 238 F.3d 1084, 1087 (9th Cir. 2001)** (citing **de Kaplany v. Enomoto, 540 F.2d 975, 979 (9th Cir. 1976)(en banc)**); see also Pate, 383 US at 385, [] (finding the statutory procedure using the "bona fide doubt" standard to be constitutionally adequate). A bona fide doubt exists if there is "'substantial evidence of incompetence,'" **Amaya-Ruiz v. Stewart, 121 F.3d 486, 489 (9th Cir. 1997)** (quoting **United states v. Lewis, 991 F.2d 524, 527 (9th Cir. 1993)**), or substantial evidence that the defendant lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against him." **Dusky v. United States, 362 US 402,** [] **(1960) (per curiam)**; see also **Torres v. Prunty, 223 F.3d 1103, 1106 (9th Cir. 2000)**. **Williams v. Woodford 306 F.3d 665, 701 (9th Cir. 2002)**.

"We review the record to determine whether evidence before the state trial court raised a "bona fide doubt" that **Odle** was competent to stand trial. See **Pate, 383 US at 385; De Kaplany, 540 F.2d at 979**. If a reasonable judge would have had such a doubt, **Odle** was entitled to a competency hearing at the time of trial and the failure to hold such a hearing violated his right to due process. See **Moran v. Godinez, 57 F.3d 690, 695 (9th Cir. 1994)**." **Odle v. Woodford, 238 F.3d 1084, 1087 (9th Cir. 2001)**.

In the present case, the trial court failed to review the record to determine whether evidence before it raised a "bona fide doubt" that petitioner was competent to stand trial. It was an abuse of discretion for the trial court not to hold a hearing before trial to hear evidence and made a determination whether petitioner was competent to stand trial. These facts, coupled with the fact the jury was instructed with CALJIC 17.41.1. (See

31.

Ground 1 supra) rendered petitioner's trial fundamentally unfair and in violation of due process of law.

The evidence in this case was overwhelming that the petitioner was incompetent to stand trial. The court denied petitioner his due process rights by: 1) Denying petitioner a hearing to determine his competency; 2) allowing Dr. Markman to give information to the jury on his diagnostic impression of petitioners competence to stand trial when in fact Dr. Markman "did not" give petitioner a fair and complete evaluation, in that he only evaluated petitioner on one occasion, and for a mere thirty minutes; 3) the court ignored the other two doctors who both spent adequate time with the petitioner.

Petitioner has clearly shown herein, that the court erred in, not only allowing the petitioner to stand trial, when the evidence clearly proven by Dr. Kowell and Dr. Perrotti, that petitioner was incompetent to stand trial, but also by allowing Dr. Markman to give a diagnostic impression to a jury on petitioner's competence, when he in fact did not give petitioner a full evaluation.

Therefore, the Magistrate Judge's interpretation and application of Cooper v. Oklahoma, 517 US 348 (1996), is contrary to and an unreasonable application of clearly established Supreme Court precedents.

Petitioner's conviction must be reversed.

CONCLUSION

The court need not determine whether each above error alone meet the "Substandard and injurious effect of influence" standard because the errors, when considered cumulatively, deprived petitioner his right to a fair trial. See Harris v. Wood (9th Cir. 1995) 64 F.3d 1432; and Mark v. Blodgett (9th Cir. 1992) 970 F.2d 614, 622, cert. denied, 507 U.S. 951 (1993).

Further, when reasonable Judges are in grave doubt about a conviction, then petitioner must win. See O'Neal v. McAninch 130 L.Ed.2d 952, 953.

If the prisoner's underlying constitutional objection to his conviction is itself substantial, then the district court may issue a certificate on those issues (even though the petition was denied without reaching it) and append the statutory ground as an antecedent issue to be resolved on appeal if it, too, is substantial. See Slack v. McDaniel, 529 U.S. 473, 484-85 (200).

Petitioner has clearly established in this motion, supported by the record, that the actions of his state proceedings, were contrary to and an unreasonable application of clearly established federal law in relation to the rulings of law and facts of this case.

Petitioner reincorporates by reference and resubmits his original petition for writ of habeas corpus, his Traverse, his objections to Magistrate's findings and recommendations, along with all records, motions, exhibits and files in this case, as if fully set forth herein.

33.

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

"(14th) AMEND."

(1.)   The Due Process Clause of the Fourteenth Amendment porhibits the states from trying and convicting a mentally incompetent defendant.   A defendant is not competent and may not be put to trail unless he or she has (1).   Sufficient present ability meaningfully to consult with counsel an participate in the defense.

34.