```
Dennis Cunningham  #112910
115-A Bartlett Street
San Francisco, CA 94110
415-285-8091 / FAX 285-8092

Attorney for Plaintiffs
```

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IVAN VERNARD CLEVELAND, | No. Cv 07-2809-JF |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO ORDER of 6/24/08 And ADMINISTRATIVE MOTIONS FOR:** |
| vs. | **+ LEAVE TO INTERVENE**<br>**+ LEAVE TO AMEND**<br>**+ TO STRIKE OR STAY THE MOTION FOR SUMMARY JUDGMENT; and** |
| BEN CURRY, Warden, et al., | **+ For AN ORDER TO SHOW CAUSE Re: Destruction and pilferage of Plaintiff's legal papers and materials and other property** |
| Defendants. | |

Plaintiff by his undersigned attorney responds to the Court's Order of June 24, 2008 (and defendants' "Motion for Clarification", filed 7/02/08), as follows:

**1. Retaliation Against the Plaintiff.**

There is important new urgency in plaintiff's recently self-filed "Motion Against Retaliation", noted in the Court's Order — and what should become a primacy of concern in these proceedings — born of the fact that the prisoner plaintiff's fear and warning about retaliation against him for his complaint has now been made unhappy fact, by way of a vicious, wanton, totally destructive and clearly revengeful ransacking of his cell at Soledad, on June 24, 2008. The trashing was apparently carried out by an officer assigned to "search" the cell, for an unknown reason, who could not have gained access, and accomplished the trashing, without the knowing involvement and cooperation of one or more other staff members. As plaintiff described it:

> On 6-24-08 a officer by the name of J. A–a(?) Search my cell. When I came back

> to the cell, it was totally destroyed. Legal work was trashed, and thrown on the floor. Some is missing. Photos of my wife were on the floor. Clothes thrown everywhere, on the floor, on the locker, on the top bunk. Photos missing. TV was unplugged and was on the floor. My medication was thrown on the floor. My sheets were taken off my mattress, Wash-towels on the floor. Sweat-pants and shirts thrown on the floor.... Books were ripped in half, letters thrown everywhere. The glass was tak(en) out of my windows. Three plate flat (sic) windows are gone. I'm being force(d) to sleep without windows, in the cold. Dirt was thrown on the bed top and bottom. I have a single cell. Some of my legal work is gone.

This is from a letter received here July 2, 2008, stating the plaintiff's knowledge and belief that this trashing was in retaliation for his claim against defendant Abanico, and begging the undersigned to "inform the Hon. Judge Fogel of this" and to "file on this please", for some effective relief — whatever that may be...

The cell-trashing comes on the heels of plaintiff's *pro se* plea to the Court for protection against just such an attack against him: extra-legal and really nasty, and hurtful, occurring on the same day this Court ordered an extension of time for further submissions in support of his opposition to summary judgment in the litigation the trashing is meant to retaliate for. Thus it appears the Court's authority is also seriously affronted, especially where his legal papers were taken or ruined.

The undersigned urges the view that this incident calls for swift, responsive, piercing inquiry by the Court, particularly as to why the chain of command at the prison would not have been alert to prevent further deprivation of the plaintiff's rights, in the circumstances — regardless of their personal views of the merits of his original complaint, or the mass protest it is part of — and what communications have been had among them about the allegations therein. Accordingly he submits herewith a proposed Order on the defendant prison authorities: the Warden or his proper, knowledgeable surrogate(s), to Show Cause why sanctions should not issue, against the officer(s) who carried out the "search" of plaintiff's cell, and the responsible supervisor(s).

**2. Continuing Problems with the Posture of the Case.**

In the meantime, plaintiff and the undersigned appreciate the Court's partial recognition of the circumstances faced by U/S in trying to help these prisoners defend and protect themselves from a sexual predator with great power over them, and gain redress against prison

administrators and supervisors who indulged the predator in his sickness for months on end. However, problems which led the undersigned to seek a status conference remain, centering around the skewed basis of the case at present, as follows:

    a. The defendants' summary judgment claim is based on the prolix assertion that the search of plaintiff by defendant Abanico, replete with a "cupping of the genitals" by the officer with his hands outside the clothing, was authorized by regulations, and therefore privileged, and immune, regardless of the plaintiff's own assertion that the defendant handled him with outright prurience, fondled him; i.e, sexually molested him. This defendants ignore, except for Abanico's own bald denial; which obviously creates a triable issue of fact, by itself, both as to whether the search violated plaintiff's constitutional rights, and whether defendant could have qualified immunity.. This, the long and short of the summary judgment issue, should be enough to defeat it, as it were, summarily.

    b. However, the plaintiff has submitted powerful additional evidence on the core issue of whether the defendant's actions were those of a sex pervert, rather than an officer going about his duties — where, clearly, like any long-term prisoner, plaintiff is personally, physically and psychically well aware of the difference — in the form of like testimonies and complaints by numerous other prisoners who affirm that this defendant officer, alone among all the others, is — or was for some time — dangerously, repellantly, on the make. The documents reflecting these affirmations — and showing also that the John Doe defendant higher-ups at the prison were aware of the mass complaint about CO Abanico — were filed by plaintiff as exhibits with his with his "Opposition to the Dispositive . Motion Against Summary Judgment" filed 4/30/08 (Dkt 34).

    c. This evidence consists primarily of sworn statements in holographic declarations by a total of 18 other prisoners, each containing an allegation of his own grievance against Abanico, along with an "EMERGENCY GROUP APPEAL" of June 22, 2007, prepared and submitted by Kenneth Trask (an intervening would-be plaintiff herein), with two and a half pages of signatures on a written demand that CO Abanico be removed from the main hallway post (whence he would accost people, in his lust). These materials, standing alone, should suffice to defeat the motion

1    — at least given the argument defendants make — nor does it seem necessary, in the
2    circumstances, to require further solemnization of such earnest and urgent representations.
3    Certainly the holographic sworn declarations of other prisoners, organized by plaintiffs, alleging
4    on oath the same wrongdoing against them by the same officer, represent evidence, admissible
5    under R.404(b), F.R.E., which a jury could reasonably find was proof defendant was a molester,
6    and molested the plaintiff(s) as alleged

7        d. In this connection, anent defendants' "Motion for Clarification", plaintiff has no
8    objection to allowing reply by defendants to this and any further submissions; indeed we are
9    most interested to learn how they intend to show that, as a matter of law, defendant Abanico did
10   not molest the plaintiff(s), in violation of Eighth Amendment rights.  However, we believe the
11   Attorney General is altogether misguided in attempting to defend — and thus willy-nilly cover
12   up for — an officer who so plainly has such an aggravated, potentially explosively dangerous,
13   psychological problem — rather than protect both him and the prisoners by ensuring that he is
14   removed from any contact with them, and given comprehensive counseling...

15       e. By the same token, one would expect an upright Attorney General, upon inspection of
16   the plaintiff's exhibits proving the officer's prurience, and upon learning of the retaliation against
17   plaintiff, to withdraw the instant motion, and enter a settlement process premised on, (1) a
18   guarantee that the officer will not be re-assigned where he can molest or harass any prisoner; (2)
19   recognition that plaintiff and the other prisoners he did molest — and was permitted, and left
20   free, to molest, by responsible John Doe defendant higher-ups — were significantly injured and
21   violated in many cases and are entitled to reasonable redress; and (3) assurances against further
22   retaliation against plaintiff(s) or any other prisoner by or on behalf of CO Abanico.

23       f. In the absence of such enlightened action, the undersigned must again appeal to the
24   Court, by way of the remedial nature of its civil rights jurisdiction, to make such allowances as
25   are necessary to receive plaintiff's evidence in its present form — and particularly the
26   Declarations and statements, and the Emergency Group Appeal, etc. submitted as exhibits —
27   and to find that it creates Triable Issue of Fact as to the wrongful, prurient and unconstitutional
28   character of defendant Abanico's actions, precluding summary judgment, and as to the actionable

1  derelictions of the defendant Warden and other responsible higher-ups.

3     g. The latter issue, regarding the alleged liability of unknown supervisors administrators, is presently bound up in the plaintiff Ivan Cleveland' unschool but quite cogent allegations against Warden Curry, and his denial of responsibility as part of defendants' motion; and plaintiff's need for, *inter alia* (See below), reasonable Discovery — per R.56(f), F.R. Civ P.— regarding the identity of various John Doe defendant officers at Soledad who had responsible knowledge of the complaints about Abanico's assaults, and rejected them and did nothing. Warden Curry obvious bears the ultimate responsibility for protecting the rights of plaintiffs and other prisoners at Soledad; so, if he did <u>not</u> have knowledge, and fail to act, he still has responsibility herein to identify the responsible delegated surrogate underlings, and plaintiff should be entitled to further time and opportunity, in fairness, to implead and establish their case against such defendants.  And, by rights, he/they should only have to meet a demand for summary judgment on those terms.

**3.  Actions Needed To Re-Organize the Case.**

Accordingly, plaintiff seeks relief from the Court at this point, by way of the following "Administrative" Motions:

**I.  MOTION FOR AN ORDER TO SHOW CAUSE.**

Plaintiff Ivan Cleveland moves this Court for an Order on defendant Curry, as Warden, who had and has ultimate responsibility for supervision and discipline of corrections officers at Soledad, and for protection of the rights of plaintiffs and other prisoners there against unconstitutional vengeful actions against prisoners in retaliation for allegations of violation of their rights, to <u>Show Cause</u> to this honorable Court, at a hearing at a time and place in the near future, to be set by the Court, why he, the Warden, or his responsible underlings, should not be sanctioned — for contempt of court or otherwise — for the trashing and destruction of plaintiff's property, including legal papers from and relating to this action, in his cell at Soledad on June 24, 2008, in patently evident retaliation against plaintiff for the claims he has raised in this case, and his (and his attorney's) actions in pursuit of those claims.

1 WHEREFORE, plaintiff Ivan Cleveland respectfully asks that this honorable Court fix a
2 date for such hearing, and sign an Order such as that proposed and submitted herewith, directing
3 the warden and/or his responsible delegate to appear and explain to and persuade the Court why
4 sanctions should not be imposed; and he requests such other and further relief as is appropriate
5 and just in the premises.

## II. MOTION FOR LEAVE TO INTERVENE IN THIS ACTION.

7 Soledad prisoners Demetrius Huff, Desmond Jones, Robert Morris and Kenneth Trask
8 (who has been transferred to the CDC "Men's Colony" at San Luis Obispo, CA), by their
9 undersigned Counsel, move this honorable Court for leave, under the provisions of R.24, F.R.Civ
10 P., subs (a) and (b), to intervene in the action as additional plaintiffs, as set forth in the plaintiffs
11 First Amended Complaint (Proposed), submitted herewith.  These four state to the Court that
12 they have an interest in the 'transaction' which is the subject of the action, per R.24(a), and that
13 they are "so situated that the disposition of the action may as a practical matter impair or impede"
14 their ability to protect their interest, as provided by the Rule.

15 The Intervenors are "so situated, etc.", in that, where defendants seek summary judgment,
16 a decision by the Court sustaining defendants' assertion that prison regulations permit "cupping
17 of the genitals" during a "clothed body search", and that, therefore, no constitutional violation
18 took place when defendant Abanico search plaintiff Cleveland, and/or that CO Abanico, and,
19 derivatively, Warden Curry (and John Doe defendants) are entitled to qualified immunity,
20 because they could not have understood that Abanico's conduct, and the toleration and covering
21 up were unlawful, would effectively wipe out claims of these Intervenors also.

22 The Intervention is also proper under Subsection (b) of the Rule in that, in particular, the
23 Intervenors' claims have in common with plaintiff's complaint herein the central questions of law
24 and fact raised by the defendants' pending summary judgment claim, namely: (1) Whether, in
25 effect, the regulation in question would permit an officer to sexually grope, fondle or otherwise
26 molest a prisoner during a clothed body search, or insulate an officer who did so from an action
27 at law for violation of rights: and (2) Whether CO Abanico did in fact sexually grope, fondle or
28 otherwise molest plaintiff, the Intervenors and numerous other prisoners during clothed body

6

1 searches at Soledad in 2007 (and 2008?).

3 WHEREFORE, your named Intervenors respectfully ask the Court for leave to join this action as additional plaintiffs, per the allegations set forth in the proposed First Amended Complaint, submitted herewith; and for such other and further relief, including Trial by Jury, and Attorneys Fees, as is appropriate and just in the premises.

### III. MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT.

Plaintiff (and the above-named Intervenors) move this honorable Court for leave, pursuant to Rule 15, F.R.Civ P., to file the proposed First Amended Complaint, submitted herewith, to substitute for the *pro se* complaint originally filed by plaintiff Ivan Cleveland, and certified by this Court's Order of November 2, 2007, so as to more clearly articulate the claims against the Warden and other higher-ups, add the claims of the Intervenors, and seek equitable relief.  Plaintiff asserts that, in the circumstances, the matters raised in the F.A.C. may fairly be held to relate back to the original filing herein; that defendants have had reasonable notice of the claims no raised; and that there is no problem of Limitations raised in any case.

In support, plaintiff asserts very briefly that leave to amend "shall be freely given when justice so requires." F.R.Civ.P 15(a).  The Ninth Circuit has said that the "policy of favoring amendment to pleadings should be applied with extreme liberality." *D.C.D. Programs., Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (Emphasis added)   Here plaintiff assumes that revisions adding other prisoners as plaintiffs, and clarifying and extending his claims—and particularly the claims against the John Doe Soledad higher-up defendants, and against retaliation— will be basically salutary, and unexceptionable.

WHEREFORE, plaintiff (and the above-named Intervenors) respectfully ask the Court to grant them leave to file the within Amended Complaint, and to grant such other and further relief as is appropriate and just in the premises.

### IV. MOTION TO STRIKE OR STAY SUMMARY JUDGMENT MOTION.

Finally, plaintiff(s) and the Undersigned submit to the Court, in light of all the circumstances shown and discussed above, that the pending summary judgment motion

1  submitted by defendants should be stricken, or the proceedings on it stayed per Rule 56(f) and
2  the other

4  equities shown herein — or the motion should simply be denied, without prejudice to renewal at
5  a more propitious time, when plaintiffs' case is fairly developed.
6      Specifically, we point to the following reasons and grounds for such action:
7      1. The well-founded allegations in the proposed First Amended Complaint, and the need
8  to get the intervening plaintiffs, the proper 'enabling' and cover-up defendants, and the retaliation
9  claims before the Court;
10      2. The objective incompetence and sophistry of defendants' summary judgment claim
11  that "cupping the genitals" is permitted by regulation, and therefore immune, without regard (or
12  answer) to the allegation that — as a matter of (disputed) fact — it amounted to unlawful sexual
13  molestation when carried out against plaintiffs and so many other prisoners by CO Abanico, in
14  his travail; and,
15      3. The fact that there has not been a fair opportunity for plaintiff to discover the identities
16  of responsible members of the CTF-Soledad chain of command between defendants Abanico and
17  Curry, and to implead them and develop his evidence against them; which works injustice.
18      For plaintiffs it is patent that summary judgment will not lie in this case, and that the
19  profound, wrenching declaration evidence of so many other prisoners — risking much, as we
20  already see, in 'sticking their necks out' against this one officer — is absolutely admissible to
21  show his design and plan, purpose and motive, modus operandi, etc., and malice, in these
22  assaults; and so the Court should deny or postpone its consideration of the motion, have the case
23  rectified as requested herein, and proceed to a determination of the prisoner-plaintiffs' right to
24  injunctive relief — after fair inquiry into the discovery facts pertinent to that question...
25      WHEREFORE, to sum up, this Court is earnestly requested to take action along the lines
26  suggested in these motions, to re-organize the case and thereby better get at the underlying
27  problems it presents. Specifically, the Court is asked:
28      + to find that important and dynamic rights of the plaintiffs are affected on a continuing

basis — as the up-to-date trashing of Ivan Cleveland's cell lamentably and somewhat ominously shows — where the Boss of the Prison and his staff were for many months, and possibly still are,

tolerating and enabling an evidently highly aggressive, likely rather psychologically unbalanced, sexual predator, on their defendant staff, who has victimized large numbers of prisoners;

+ to deny, strike or postpone defendants' motion for summary judgment until the case can be revised as suggested herein;

+ to grant leave to the Intervenors to join the case, and to plaintiffs to file the amended complaint; to deny or postpone decision of any claim by defendants for summary judgment;

+ to set dates not too far off for filing and hearing plaintiffs' motion for Injunction and related equitable relief; and

+ to sign and issue the Order to Show Cause Re: Ransacking of Plaintiff's Cell or enact its moral equivalent in response to this outrage; and

+ to grant such other and further relief as is just and appropriate, needed to vindicate basic human rights of convicts, in the premises of this most repulsive and lamentable case.

DATED: July 14, 2008

Respectfully submitted,

/s/
Dennis Cunningham
Attorney for plaintiff and Intervenors