1  Dennis Cunningham  #112910
   115-A Bartlett Street
2  San Francisco, CA 94110
   415-285-8091 / FAX 285-8092
3
   Attorney for Plaintiffs
4

5

6             **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
7                    **SAN JOSE DIVISION**

8

9  IVAN VERNARD CLEVELAND,                 No. Cv 07-2809-JF

10         Plaintiff,                      **PLAINTIFF'S SUPPLEMENTAL MEMO IN**
                                           **OPPOSITION TO DEFENDANTS' MOTION**
11                                         **FOR SUMMARY JUDGMENT**
       vs.                          )
12                                  )
                                    )
13 BEN CURRY, Warden, et al.,       )
                                    )
14         Defendants.              )
   _____)
15

16      Plaintiff Ivan Cleveland, per the Court's Order of June 24, 2008, adds comments by his

17 undersigned attorney, to supplement his previous showing in opposition to defendants' Motion

18 for Summary Judgment, as follows:

19      **1. The Matter is Not Ripe for Determination.**

20      In terms of the standard for summary judgment presented by defendants in their brief, we

21 point to the block quote at the beginning of their argument, saying, "... Rule 56(c) mandates the

22 entry of summary judgment, *after adequate time for discovery*..." if the plaintiff is unable to

23 make out his case. See Dfts" Memo, p.9:7-8 (Emphasis added).  The plaintiff here has not had

24 the opportunity — let alone the wherewithal — to take discovery; even enough to find out the

25 identities of the real culprits among the administrators and supervisors standing the shoes of the

26 defendant Warden, and to implead them, with him or instead of him.

27      In this connection, it is significant that there is no declaration from the defendant Curry,

28 asserting his ignorance of the mass protest about CO Abanico's abuses, or describing how he

learned of it and responded reasonably — by delegating the matter to the Real Culprits. As previously argued, under Rule 56(f), plaintiff deserves an opportunity to investigate this aspect of the case before facing summary judgment.

### 2. Defendants' Precedents Are Inapposite

The *Somers* case, cited by defendants on pages 10 and 11 of their memo, is easily and crucially distinguishable on its facts by the absence of 'a harmful or offensive touching', i.e., a sexual battery — as opposed to the defendant (female) officers supposedly looking and pointing and joking among themselves, in *Somers*, while the plaintiff was naked. As the Court there notes, the plaintiff did not even allege an intent to humiliate him; and the circumstances generally bespoke routine practice, not the scourge and menace of an individual serial sexual predator.

As previously noted, the plaintiff accepts the reasonableness, in principle, of the 'random clothed body search', and even 'cupping the genitals', under the regulations; so long as it is done with propriety and professionalism. Rather, the scourge, the sexual predation, is the gravamen here; and the blind eye. They go together to cause the Fourth Amendment violations at issue — as contemplated at length by the Court in the *Somers* opinion — and the facts here are well within that Court's notion of 'retained privacy', within Fourth Amendment protection, in the prison. 109 F.3d at ___. By the same token, *Somers* also does not at all concern the use of unreasonable force, which is implicated here both in the coercion of the random security search and the repeated allegation that CO Abanico often carried out his groping and fondling with an elbow driven into the victim's back, jamming him face-first against the wall. How could a sexual assault, a crime under state law, carried out under the coercion of an authorized body search, be found a reasonable use of force under the Fourth Amendment, in prison or out?

### 3. The Defendant's Malign Intent is Amply Shown in Plaintiff's Evidence.

So, what defendants' argument regarding the defendant officer boils down to is, that the plaintiff's claim must fail because the search was lawful, and "he does not allege or show it was done with any subjective intent to humiliate him" (Dfts' Memo, p.11:9-10); but that's not true.

As to an <u>Allegation</u>, it may have been imperfectly set forth in the plaintiff's *pro se* submissions in the matter; but it was and is, plainly, the essence of the case. If his assertion of it

2

needs to be improved upon, we again invoke Subsection (f) of the rule; and/or we request that the several various assertions to that effect herein and hereinbefore adduced by the undersigned be allowed to stand, *pro tanto,* until any needed additional specifics can be provided.

Moreover, in should be plain that this plaintiff's allegation, and that of his co-plaintiffs and all the other witness-claimants and potential class members, goes well beyond a "subjective intent to humiliate" the plaintiff. *Id*. All these individual prisoners — who, at a minimum, qualify as plaintiff's witnesses under R.404(b), F.R.E. — allege that what CO Abanico did was, to paraphrase the criminal statute, "touch an intimate part" of a person — in fact, many persons — "unlawfully restrained by the accused",[1] where the touching was "against the will of the person" and was carried out "for the purpose of sexual arousal, sexual gratification, or sexual abuse" by this officer. And, we allege, there was an additional, 'inextricably intertwined', corollary intent: to humiliate, and intimidate, and dominate and punish, etc, etc, in violation of the Eighth Amendment, as its well-known prohibitions are also spelled out in the Court's opinion in the *Somers* case defendants cite: that's the allegation in its fullness.

As to a Showing, plaintiff Cleveland has submitted his copious evidence, at least twice, establishing beyond doubt that many other such (perverted) touchings of other prisoners by this officer, sworn to by 18 of them and subscribed by 118, to support the allegation of deliberate, aggravated, sexual assault, violating the 8th Amendment. As the Court stated in *Somers*, "[C]ourts considering a prisoner's claim must ask: 1) if the (defendant) officials acted with a sufficiently culpable state of mind; and 2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991))." The further question here is, in turn, whether plaintiff has presented — or, in fairness, can present — evidence on which a Jury could find "the unnecessary and wanton infliction of pain", per *Whitley v. Albers,* 475 U.S. 312, 319 (1986), with

---

[1] The "unlawfulness" of the restraint in these circumstances, where random security searches are evidently not unlawful, arises from the defendant officer's actual prurient intention, as alleged, where the pretense of a routine random search is in fact a fraud, covering the true (criminal) intention to carry out a sexual assault...

respect to both the assault and the attitude of toleration that brought it about?  That is, does the evidence, taken in the light most favorable to the plaintiff, reasonably establish a deprivation which "den(ies) the minimal civilized measure of life's necessities" to these prisoners, in a manner which is "sufficiently grave to form the basis of an Eighth Amendment violation."?  *Somers,* 109 F.3d at 623, citing *McMillian v. Hudson*, 503 U.S. at 9, 112 S.Ct. at 1000 (internal quotations and citations omitted).

### 5. The Defendant Warden Has Not Shown Undisputed Facts Entitling Him To Judgment as a Matter of Law.

Defendants' statement of Warden Curry's defense begs the question again: "[B]ecause Abanico's body searches were statutorily required by state law (*sic)*... Curry *could not* know of any constitutional violations..." Memo, p.11:22-23 (Emphasis added).  They correctly state that plaintiff must show that the defendant participated personally or had knowledge of violations by subordinates and did nothing.  Memo, p.11:16-18.  We don't allege or believe he was present for any of the assaults, let alone that he joined in; but we don't know whether or not he had knowledge — or *scienter*, as it were, where he was turning his own Blind Eye, and now asserts "deniability" — because there was no discovery.  Q.E.D.  And, again, there is no Denial presented by him.  All the same, maybe he did not know; let's find out.  But it is ridiculous to allege that he could not know.

How could he not know, in any case?  An Emergency Mass Appeal is submitted with 118 signatures, all complaining that one particular officer is a serial sexual molester — whose actions obviously pose the danger of a violent blow-up at any time — and the Warden doesn't hear about it?  Which is the worse dereliction, in the circumstances: that he learns of it and does nothing, or that he is genuinely oblivious?  Either way, the need for fair discovery is patent.

### 5. There is No Fair Basis For A Grant of Qualified Immunity.

Qualified Immunity does not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs.* 475 U.S. 335, 341 (1986).  It doesn't protect a sexual predator,  or those supervisors and administrators who knowingly or obliviously allow a predator to prey on prisoners under cover of routine searches.  Sexual battery is a crime, as well as a

Constitutional violation in this context; and aiding and abetting it — enabling it to go on by rejecting and flim-flamming the many complaints — is equally culpable. That the "contours" of the prisoners' rights in this regard were clearly established cannot reasonably be questioned, and is clearly shown, most immediately, by the Fourth and Eight Amendment precedents so amply discussed in the *Somers* opinion. See ibid, 109 F.3d at 622-624.

Defendants' argument for qualified immunity is the same empty recitation of the legality of the clothed body search, which, as we have seen, is not the point. They have not and obviously cannot argue that sexual assault is immune; so this claim must also fail.

**6. Conclusion**

With respect to the claim against CO Abanico, the defendants' present motion amounts to little more, or less, than a between-the-lines demand on the Court, that — by adopting the same moral indifference, and co-opting the misbegotten, anti-human strictures of the Prison Litigation Deform (read: Suppression) Act — it join the prison administration in sweeping the problem under the rug. This would be an altogether intolerable response to the showing that has been made, and the know-nothing construction of the problem in the Attorney General's pleadings. Ivan Cleveland and the other prisoners have shown admirable forbearance and tact in attempting to get something done about this problem by going to the Law. The defendants and their Lawyers think the Court should respond with the Back of its Hand. That won't do.

WHEREFORE, the plaintiff reiterates his requests to the Court in his recent Response to the Order of 6/24/08; asks that the instant Motion be denied in all respects relating to the claims against CO Abanico, the Warden and the implicated John Doe defendants; and prays the Court will grant such other and further relief as is just, effective and appropriate in the premises of this awful case.

DATED: July 24, 2008

Respectfully submitted,

/s/
Dennis Cunningham
Attorney for plaintiff