UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

IVAN VERNORD CLEVELAND, et al.,

          Plaintiffs,

     v.

BEN CURRY, et al.,

          Defendants.

Case No.  07-cv-02809-NJV

**ORDER RE DEFENDANTS' POST-TRIAL MOTIONS**

Re: Dkt. Nos. 216, 217

## INTRODUCTION

Plaintiffs in this matter were incarcerated in the Central Training Facility, a California Department of Corrections and Rehabilitation ("CDCR") institution in Soledad.  They alleged that, in the course of conducting clothed-body searches on them between 2006 and 2008, defendant Erwin Abanico squeezed and grabbed their genitals.  They alleged that this violated the training Abanico received from CDCR instructors and deviated from standard search practices.  They also alleged that the warden at the time of these improper searches, defendant Ben Curry, knew of Abanico's conduct but failed to intervene to stop it.  Defendants argued that Abanico conducted the searches in accordance with his training, and never squeezed or grabbed Plaintiffs' genitals.  They further argued that Curry reasonably investigated the allegations against Abanico and satisfied himself that Abanico's conduct was proper.

Trial in this matter concluded on November 8, 2013.  The jury returned a verdict for Plaintiffs and against Defendants.  *See* Doc. No. 211.  The jury found that Abanico had violated Plaintiffs' Eighth Amendment rights and awarded compensatory damages to Plaintiffs; the jury also found that Abanico's acts were "malicious, oppressive, or in reckless disregard of Plaintiffs' rights," such that punitive damages were warranted.  The jury found that Curry had failed to

intervene to stop the violation of Plaintiffs' Eighth Amendment rights and awarded nominal damages to Plaintiffs; the jury also found that Curry's failure to intervene was "malicious, oppressive, or in reckless disregard of Plaintiffs' rights," such that punitive damages were warranted.  With respect to Defendant Abanico, the jury awarded $2,000 in compensatory damages to Plaintiffs Cleveland, Jones and Morris; $5,000 in compensatory damages to Plaintiff Huff; $10,000 in compensatory damages to Plaintiff Trask; and, $5,000 in punitive damages to each Plaintiff.  With respect to Defendant Curry, the jury awarded $1.00 in nominal damages to each Plaintiff, and $20,000 in punitive damages to each Plaintiff.  *See* Doc. No. 211.

After the trial, Defendants moved for (1) a new trial and (2) judgment as a matter of law ("JMOL") or a remittitur.  *See* Doc. Nos. 216 & 217.  The motions were fully briefed and were argued on January 28, 2014.  For the reasons stated below, the court will deny the motion for a new trial; grant in part the renewed motion for a judgment as a matter of law; and grant in part the motion for a remittitur.

## EVIDENCE ADDUCED AT TRIAL

The following evidence was adduced at trial:

Plaintiffs testified that Abanico squeezed their penises and/or their scrotums for several seconds while performing clothed-body searches.  Morris testified Abanico only searched him once, on June 21, 2007, but squeezed his penis and scrotum twice in the same search.  *See* Doc. No. 200 at 174:23-178:2, 178:9-180:8, 210:1-9.  Jones was only searched like this once, on August 3, 2006.  *Id.* at 300:24-302:7, 313:17-314:2.  Cleveland testified that Abanico searched him in this manner five times between 2006 and 2007.  Doc. No. 199 at 103:8-11, 105:9-11, 122:10-16, 124:11-126:8, 141:1-4, 142:20-143:2.  Trask testified that Abanico searched him approximately 20 times between June 2007 and September 13, 2007, and that Abanico squeezed his penis and testicles with his fingers on a number of those occasions.  *Id.* at 78:10-13, 90:1-9; Doc. No. 200 at 255:18-256:2, 267:10-268:25, 273:20-276:11.  Huff testified that Abanico searched him numerous times between July 2006 and 2008; during one July 2006 search, Abanico groped and squeezed his genitals.  During all other searches, Abanico swept his hand over Huff's groin in a fluid motion, but Huff felt that he was "feeling me up and caressing me real hard"

United States District Court
Northern District of California

during all the other searches. *See* Doc. No. 200 at 222:8-223:2, 226:21-227:3, 237:19-238:5, 243:13-247:8.

Plaintiffs testified that they did not seek medical attention, but that they suffered physical, mental, and/or emotional injuries. Doc. No. 200 at 131:5-10 & 164:2-11 (Cleveland: embarrassed, shamed, angered; incident hurt a little; he needed therapy and medication), 186:2-15 (Morris: embarrassed, violated, angry), 277:23-278:6 (Trask: hurt as if he had been hit in the groin), 312:1-5 (Jones: violated), 237:25-238:9 & 247:19-248:15 (Huff: felt harassed by repeated searches; couldn't seek psychiatric help because afraid it would hurt his effort to be paroled). Cleveland, Huff, Jones and Morris "jumped" or "came" "off the wall" despite the potentially drastic disciplinary consequences of such an act. *See* Doc. No. 199 at 106:5-107:6 & 130:17-131:10 (Cleveland); Doc. No. 200 at 178:9-11 (Morris), 304:5-20 (Jones), 222:24-225:2 (Huff).

Plaintiffs introduced into evidence a CDCR training manual that taught correctional officers to search inmates' groins by "cupping" the scrotum, and specifically emphasized that correctional officers should not squeeze the scrotums of prisoners. *See* Plaintiffs' Tr. Ex. 14.

Defense witness Todd Stoltenberg, who designs and implements training curriculum for correctional officers, testified that officers are taught not to – and should not – squeeze the scrotums of inmates during searches. *See* Doc. No. 207 at 423:9-18, 429:1-15, 444:9-11, 453:13-21, 458:4-459:14, 464:5-14.

The parties stipulated to certain facts, which were read to the jury. One of the facts the parties stipulated to was that,

> [a]s part of correctional officer training at the Department's Correctional Training Center, officers are taught to conduct clothed body searches for weapons, drugs, and other contraband. The Department's "Body, Cell, Area, and Grid Search Student Workbook" establishes procedures for a systematic clothed body search. The workbook directs the officer to "check the inmate's groin, hip and buttock" in the following manner: "Using the palm side of your left hand, check the hip area and high into the left groin area. Your left hand simultaneously searches the left rear hip and buttock area. Using a firm touch continue searching down the left leg to the foot." The officer then repeats this procedure for the inmate's right side. **While searching an inmate's groin, one officer is also directed to "cup the groin and check for contraband. Do not squeeze the inmate's scrotum."**

1    Doc. No. 203 at 17 (emphasis added).

2         Plaintiffs testified that Abanico's searches deviated from the search practices of all other

3    guards, who searched the groins of prisoners by using a pat-down or cupping method, without

4    grabbing or squeezing their genitalia, and without inflicting pain.  Doc. No. 199 at 72:25-73:23,

5    96:2-99:19 (Trask), 105:12-106:14 & 123:6-13 & 136:1-14 (Cleveland); Doc. No. 200 at 219:7-18

6    (Morris), 249:18-250:19 (Huff), 267:10-269:14 (Trask).

7         Huff testified that Abanico falsely reported to prison officials that Huff was wearing an

8    inmate-manufactured earring.  Doc. No. 200 at 233:18-19, 234:1-6.  If substantiated, this

9    allegation could have subjected Huff to disciplinary action.  Another correctional officer who was

10   present during the relevant encounter with Abanico appeared on Huff's behalf at Huff's

11   disciplinary hearing.  She testified that Huff did not have an earring.  *Id*. at 239:22-240:8.  Huff

12   was exonerated.  *Id*. at 241:5-7.

13        Trask testified that in September 2007, Abanico falsely accused Trask of threatening to kill

14   Abanico.  *Id*. at 264:17-265:7.  As a result, Trask was placed in Administrative Segregation for 8

15   months.  *Id*. at 259:15-260:7.  Trask was exonerated after an investigation.  *Id*. at 266:6-267:1.

16        Abanico testified that he did not rub inmates while performing his searches, but patted

17   them down.  *Id*. at 330:24-331:6.  He testified that he never squeezed or grabbed their genitalia.

18   *See id*. at 332:15-22.  He opined that prisoners filed complaints against him because he was doing

19   his job correctly.  *Id*. at 332:23-25.  He also testified that he was promoted in 2007, and is certified

20   to train other correctional officers on search techniques.  Doc. No. 207 at 492:13-14, 493:6-16.

21        Plaintiffs testified that Abanico never said anything sexual to them and never touched them

22   skin to skin.  Doc. No. 199 at 134:25-135:9 (Cleveland); Doc. No. 200 at 210:14-19 (Morris),

23   244:19-24 (Huff), 277:17-22 (Trask), 314:6-10 (Jones).

24        Cleveland testified on September 6, 2006, he filed a "group appeal" concerning Abanico

25   and attached a petition signed by other prisoners complaining of Abanico's search procedures.

26   Doc. No. 199 at 108:20-112:14.  (Although the court sustained Defendants' objections to

27   Cleveland's testimony about other prisoners signing the group appeal, and excluded the signatures

28   from evidence, the testimony about Cleveland drafting the group appeal and filing it with prison

United States District Court
Northern District of California

4

1   officials was admitted.  *Id*. at 115:2-12, 147:1-21.)  In addition, each Plaintiff filed an individual

2   "602" – a formal grievance – about Abanico.  Plaintiffs' Tr. Exs. 6B (Huff, August 3, 2006 &

3   September 15, 2007), 6C (Jones, December 27, 2006), 6D (Morris, June 22, 2007), 6E (Trask,

4   June 22, 2007); 6A1 & A2 (Cleveland, September 6, 2006 & June 23, 2007).

5           Although Curry could not recall when he learned about the complaints against Abanico, he

6   testified that he learned that 150 prisoners had signed a complaint about Abanico's searches.  Doc.

7   No. 200 at 362:22-365:7, 367:15-368:2; Doc. No. 207 at 418:2-19.  Upon becoming aware of

8   these allegations, he became concerned and spoke with Deputy Warden Knoll, In-Service Training

9   Lieutenant Peterson, and Security Squad Lieutenant Biggs; they all confirmed that Abanico was

10  performing his job properly.  Doc. No. 200 at 368:5-14, 370:15-21 (Knoll), 370:23-371:10

11  (Peterson), 387:18-388:19 (Biggs); *see also Doc*. No. 200 at 368:12 (Curry also spoke to Sergeant

12  Keane).  Curry speculated that the majority of the people who signed the group appeal concerning

13  Abanico had done so because they were presented with a petition, and did not actually have a

14  grievance; he thought maybe Abanico was being singled out because he was being thorough.  Doc.

15  No. 200 at 377:18-380:12, 384:6-385:4, 388-390; Doc. No. 207 at 409:24-411:5; *see also* Doc.

16  No. 207 at 419:5-421:5 (when Curry did not hear anything more from his staff regarding the

17  petition, it confirmed in his mind that the allegations of sexual abuse had been unfounded), 461:6-

18  12 (Stoltenberg testified that numerous complaints against an officer might indicate the officer

19  was "actually doing his job" whereas some of the other guards might not be; "we also teach in the

20  Academy that that's one way inmates can get rid of a staff member that's doing their job, is to

21  complain").  Abanico learned about the investigation and requested a meeting with Curry.  Doc.

22  No. 200 at 362:3-9; Doc. No. 207 at 411:8-412:22.  Curry met with Abanico and felt that the

23  correctional officer was performing his job appropriately, but he told Abanico that he was going to

24  have to find a way to conduct the searches "without generating so much hate and discontent."  *Id*.

25  at 378:1-12, 379:25-380:2; *see also* Doc. No. 207 at 413:11-15.  Curry, who retired from CDCR,

26  did not appear at trial; his deposition testimony was read into the record without objection from

27  Defendants.

28          At trial, Abanico did not recall meeting with Curry; did not recall that prisoners had used

United States District Court
Northern District of California

the prison grievance process to complain about his searches; and did not recall that he had been interviewed about the grievances filed against him.  Doc. No. 200 at 333:21-334:23, 335:10-343:16; Doc. No. 207 at 489:11-17.

Abanico testified generally that he found contraband while performing clothed-body searches (Doc. No. 207 at 489:18-22); he did not testify that he found contraband on the Plaintiffs. Stoltenberg testified that searches of inmates' groins are performed to find contraband, food, or weapons.  *Id.* at 429:16-430:4, 433:5-7.

## RENEWED MOTION FOR JMOL

Defendants moved for judgment as a matter of law ("JMOL") before the case was presented to the jury.  They argued that (1) "Warden Curry couldn't be held liable for failing to intervene because there's no evidence in front of the jury that these searches happened after the meeting [with Abanico]. They don't even know when the meeting was. So, therefore, there's no way he could have intervened because we don't even know if the searches occurred after the meet[ing]" (Doc. No. 207 at 517:3-8); and (2) Morris, Huff and Jones "produced no evidence that they suffered physical injury and were not subject to a sexual act by defendant [and] the searches conducted on them only resulted in de minimis injury, if at all, from the isolated, brief incidents" (*id.* at 519:22-521:11).  Defendants did not move for JMOL as to Cleveland and Trask's Eighth Amendment claims against Abanico.  The court denied their motion.  Doc. No. 207 at 512:16-522:22.

Defendants now renew their motion for JMOL on two grounds:  a reasonable jury could not find, based on the evidence admitted at trial, (1) that Abanico violated Plaintiffs' Eighth Amendment rights while conducting clothed body searches; or (2) that Curry violated Plaintiffs' Eighth Amendment rights by failing to intervene.

## I.  LEGAL STANDARD.

The court may grant this renewed motion for JMOL if there was "no legally sufficient basis for a reasonable jury" to find for Plaintiffs.  Fed. R. Civ. P. 50(a).[1]  JMOL is proper only if

---

[1] "Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion. Thus, a party cannot properly 'raise

United States District Court
Northern District of California

1  "'the evidence, together with all reasonable inferences in favor of the verdict, could lead a

2  reasonable person to only one conclusion, namely, that the moving party is entitled to judgment.'"

3  *See* R. Jones, *et al*., FEDERAL CIVIL TRIALS AND EVIDENCE § 20:4 (The Rutter Group 2013)

4  (citations omitted); *see also Ostad v. Oregon Health Sci. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003)

5  (JMOL proper only "when the evidence permits only one reasonable conclusion, and the

6  conclusion is contrary to that reached by the jury").  The court must draw all reasonable inferences

7  in favor of the non-moving party, to the extent those inferences are based on probative evidence

8  and not "threadbare conclusory statements."  *Lakeside-Scott v. Multnomah County*, 556 F.3d 797,

9  802-03 (9th Cir. 2009) ("JMOL is appropriate when the jury could have relied only on speculation

10  to reach its verdict").

## II. DEFENDANT ABANICO.

### A. The Eighth Amendment Prohibits Sexual Abuse Of Prisoners.

> The Eighth Amendment prohibits cruel and unusual punishment in penal institutions. Whether a specific act constitutes cruel and unusual punishment is measured by "the evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).
>
> Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment.  *See Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) ("In the simplest and most absolute of terms . . . prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse . . . ."); *see also Women Prisoners of the Dist. of Columbia Dep't of Corr. v. District of Columbia*, 877 F. Supp. 634, 665 (D.D.C. 1994) ("[U]nsolicited touching of . . . prisoners' [genitalia] by prison employees are 'simply not part of the penalty that criminal offenders pay for their offenses against society'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994))).

*Wood v. Beauclair*, 692 F.3d 1041, 1045-46 (9th Cir. 2012).

arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion.'"  *EEOC v. GoDaddy Software, Inc.*, 581 F.3d 951, 961-62 (9th Cir. 2009) (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) and citing cases).  Defendants did not move for JMOL with respect to Abanico's conduct as to Cleveland and Trask before the jury's deliberations, thus the court will review their motion as to these two Plaintiffs "for plain error, and should reverse only if such plain error would result in a manifest miscarriage of justice."  *Id.* at 962 (internal quotations and citations omitted).

United States District Court
Northern District of California

**B.  Defendants' Citations Are Inapposite.**

Defendants acknowledge that "a sexual assault on an inmate by a prison employee is deeply offensive to human dignity and violates the Eighth Amendment."  Doc. No. 217 at 2.  But, they argue, Abanico's conduct did not rise to the level of a sexual assault.  To make their point, Defendants cite several cases, including one that involves allegations of groping and sexual harassment by a different plaintiff against Defendant Abanico.  First, Defendants cite *John-Charles v. Abanico*, 2010 U.S. Dist. LEXIS 8065 (N.D. Cal. Feb. 1, 2010) ("*Abanico I*"), for the proposition that "[a] prisoner alleging sexual harassment must establish that the harassment was egregious, pervasive, or widespread in order to state a claim under the Eighth Amendment."  *Id.* In *Abanico I*, a prisoner alleged that "on August 18, 2006 and September 6, 2006, Defendant Abanico conducted random non-emergency related clothed body searches on Plaintiff.  Defendant Abanico touched him in an inappropriate manner by grabbing his penis and massaging his genitals."  *Id.* at *10.  After articulating the standard Defendants quote above, the district court in *Abanico I* concluded that the plaintiff had, in fact, stated an Eighth Amendment claim against Abanico: "according to Plaintiff, Defendant[] Abanico … handled Plaintiff's penis and genitals during clothed body searches.  Liberally construed, Plaintiff has stated a cognizable claim that Defendant[] Abanico … violated his Eighth Amendment rights."  *Id.* at *11.  Thus, allegations by another prisoner that are identical to the ones made by Plaintiffs here were construed by the district court in *Abanico I* to state a claim that the "harassment was egregious, pervasive, or widespread."

Subsequently, John-Charles' Eighth Amendment claim against Abanico based on the September 6th search was dismissed for failure to exhaust administrative remedies.  *See John-Charles v. Abanico*, 2011 U.S. Dist. LEXIS 17513 (N.D. Cal. Feb. 23, 2011) ("*Abanico II*").  Defendants here cite *Abanico II* for the proposition that "a prison employee's brief, unwanted touch of an inmate's buttocks did not violate the Eighth Amendment."  Doc. No. 217 at 2-3.  Defendants' interpretation of that opinion is incorrect.  First, the allegations in *Abanico II* were not that Abanico had "briefly" touched an inmate's buttocks, but rather than Abanico had "grabbed and massaged" the inmate's scrotum and penis during the August 18th search.  Second, the district

8

United States District Court
Northern District of California

court in *Abanico II* held that "a finder of fact could reasonably conclude that Defendant Abanico's actions constituted a sexual assault in violation of Plaintiff's Eighth Amendment right," and denied summary judgment on that ground, but granted Abanico's summary judgment motion on qualified immunity. *Id*. at *28. In finding qualified immunity for Abanico, the district court relied on the same type of CDCR training manual that Plaintiffs introduced at trial here:

> As quoted above, the CDCR Departmental Operations Manual and the 'Instructor's Guide' described how to conduct a 'systematic' clothed body-search for weapons and other contraband, including touching the subject's genitals. Such manuals are relevant to determining whether reasonable officers would have been on notice that such conduct was not lawful. [] **Defendant Abanico's intrusive search could be viewed as consistent with the instruction that he received.** Plaintiff cites no case law, and the Court is aware of none, indicating that such a thorough search is unconstitutional. Under the second prong of *Saucier*, therefore, it would not be clear to a reasonable officer that following established contraband search protocols by touching an inmate's genitals would have violated Plaintiff's Eighth Amendment rights. Because a reasonable officer in Defendant Abanico's position could have thought his conduct was lawful, he is entitled to qualified immunity as to Plaintiff's August 18, 2006 Eighth Amendment claim. Accordingly, Defendants' motion for summary judgment is GRANTED as to this claim.

*Id*. at *31-*32 (emphasis added). Far from supporting Defendants' argument, *Abanico I & II* confirm that a correctional officer may not, during the course of routine clothed-body searches, grab and squeeze an inmate's genitals in a manner that violates CDCR training. This court already found that squeezing five inmates' scrotums during clothed-body searches, in the manner alleged by Plaintiffs here, is sufficiently egregious, pervasive or widespread to state a claim under the Eighth Amendment. *See Cleveland v. Curry*, 2012 U.S. Dist. LEXIS 110827 at *6-*8 (N.D. Cal., Aug. 7, 2012) (the court also distinguished the rest of the authorities cited by Defendants in their motion for JMOL in that order).

**C. The Prison Litigation Reform Act ("PLRA") does not bar Plaintiffs from recovering damages here.**

In relevant part, the PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual

9

act as defined in [18 U.S.C. § 2246]."  42 U.S.C. § 1997e(e).[2]  Defendants argue that

compensatory damages are unavailable because Plaintiffs did not establish that they suffered more

than *de minimis* injuries, as required under the PLRA.

The parties have not cited any Ninth Circuit law addressing the PLRA's physical injury

requirement in the context of an Eighth Amendment claim based on sexual assault, and the court

has found none.[3]  Some courts in other circuits that have addressed the issue directly have applied

a "common sense" approach and found that sexual assault qualified as "more than a *de minimis*

injury" under the PLRA.  *Liner v. Goord*, 196 F.3d 132, 135-36 (2d Cir. 1999) (while there is no

"statutory definition of 'physical injury'" [in the PLRA,] the "alleged sexual assaults qualify as

physical injuries as a matter of common sense.  Certainly, the alleged sexual assaults would

constitute more than a *de minimis* injury if they occurred"); *see also Carrington v. Easley*, 2011

U.S. Dist. LEXIS 56805, *9 (E.D. N.C. May 25, 2011) (holding on default judgment in case

where plaintiff alleged a guard ordered him to undergo strip search and unsuccessfully attempted

to fellate him that "a sexual assault qualifies as a 'physical injury' under the PLRA. . . .  Even

absent a physical injury, sexual assault is an injury of 'constitutional dimensions' as to which the

PLRA does not bar recovery"); *Marrie v. Nickels*, 70 F.Supp.2d 1252, 1257, 1264 (D. Kan. 1999)

(holding in case where guard was alleged to have stroked the buttocks and genitalia of inmates

_____

[2] The statute was amended in 2013 to add "or the commission of a sexual act as defined in [18 U.S.C. § 2246]."  Plaintiffs here do not allege that Abanico committed "sexual acts" upon them as defined in the statute.

[3] A district court in the Ninth Circuit was asked to decide whether the type of sexual assault Plaintiffs allege in the case at bar constitutes more than a *de minimis* injury, but did not need to reach the issue.  In *Byrd v. Arpaio*, 2011 U.S. Dist. LEXIS 122912 (D. Az. Oct. 24, 2011), a plaintiff alleged, *inter alia*, that a guard had inappropriately touched him while performing searches.  A jury found that the defendant had performed the searches appropriately.  Plaintiff obtained a retrial on a different ground, and defendant moved to exclude plaintiff from seeking emotional damages upon retrial because plaintiff had offered no evidence that he had been physically injured, as required under the PLRA.  The district court granted the motion: "[t]he only potentially injuring action in evidence was [defendant's] alleged kneading of Byrd's penis and scrotum and alleged improper touching of Byrd's anus through his underwear.  But the jury found against Byrd on these charges, and the jury's factual findings were not disturbed on appeal.  Accordingly, Byrd was not physically injured during the strip search."  *Id*. at 8-9.  The district court thus did not have to reach the question of whether the sexual assault alleged constituted more than a *de minimis* injury because "the jury found [the defendant] performed her search appropriately.  Byrd may not now retry that issue.  Accordingly, the claim of sexual assault or other physical injury has already been resolved against Byrd and the PLRA bars him from seeking emotional damages on retrial."  *Id*. at 10.

United States District Court
Northern District of California

during frisk search that such "sexual assaults would qualify as physical injuries under § 1997e(e)").

Although the Ninth Circuit has not addressed the issue directly, two Ninth Circuit opinions provide guidance in this situation.  In *Wood*, a district court had dismissed a prisoner's Eighth Amendment claim based on allegations of sexual harassment by a guard on the ground that the prisoner had not established any physical injury.  The Ninth Circuit reversed, holding that "there is no requirement that the plaintiff produce evidence of injury; rather, the only requirement is that the officer's actions be offensive to human dignity."  *Wood*, 692 F.3d at 1050 (internal quotation marks omitted).  The Court emphasized that "at its core, the Eighth Amendment protects 'the basic concept of human dignity' and forbids conduct that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'  . . . We have previously held that a sexual assault on a prisoner by a prison guard is always 'deeply offensive to human dignity' and is completely void of penological justification."  *Id*. at 1050-51.  In *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002), the Ninth Circuit addressed the PLRA's physical injury requirement in a different context.  It held that "for all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than *de minimis*."  The Ninth Circuit found that back and leg pain the plaintiff described as "not too serious" and a canker sore were not "more than *de minimis*," but it did not describe the type of injury or the scope of injury it would consider "more than *de minimis*."  *Id*. at 629.  Finally, the Ninth Circuit held that, "[t]o the extent that appellant has actionable claims for compensatory, nominal or punitive damages - premised on violations of his Fourteenth Amendment rights, and not on any alleged mental or emotional injuries - we conclude the claims are not barred by § 1997e(e)."  *Id*. at 630.

Based on *Oliver* and *Wood*, and the out-of-circuit authorities cited above, this court finds that prisoners who establish that they were sexually assaulted by correctional officers in violation of the Eighth Amendment have established that their injuries are more than *de minimis* under the PLRA.  First, only certain types of sexually assault will cause objective and observable physical injuries, but any type of sexual assault is "always" deeply offensive to human dignity.  As a matter of policy and of common sense, it would be illogical to allow guards who (through happenstance

11

United States District Court
Northern District of California

or planning) assault prisoners without leaving observable physical injuries to escape liability under the PLRA because they have only caused psychological, emotional, dignitary and other injuries. Similarly, it would be illogical to allow guards to sexually assault large numbers of prisoners (thereby jeopardizing institutional safety[4]) but escape liability because they only assaulted each prisoner a "small" amount.  Second, unlike in other situations where guards are accused of using "excessive" force, there can be no justification for sexually abusive conduct in a prison setting in any context; there is no level of sexual force that is "acceptable" due to exigent circumstances or the realities of prison life.[5]  No use of sexual force is required to maintain discipline.  No prisoner can resist an order or behave in a manner that justifies, much less requires, sexual abuse by a guard.  Third, the Ninth Circuit has held that plaintiffs seeking compensatory damages for the violation of certain constitutional rights are not subject to the PLRA's physical injury requirement. *See Oliver*, 289 F.3d at 630 ("To the extent that appellant's claims for compensatory, nominal or punitive damages are premised on alleged Fourteenth Amendment violations, and not on emotional or mental distress suffered as a result of those violations, § 1997e(e) is inapplicable and those claims are not barred"); *see also Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998) (PLRA physical injury requirement does not apply to First Amendment claim because "deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from the physical injury he can show, or any mental or emotional injury he may have incurred . . . regardless of the form of relief sought").  Accordingly, the court finds that Plaintiffs have established that they have suffered more than a *de minimis* injury as a result of Abanico's actions or, in the alternative, that the physical injury requirement articulated in Section 1997e(e) is

---

[4] Defendant Curry testified that the type of abuse alleged in the "group appeal" that came to his attention jeopardized institutional safety for a number of reasons.  *See* Doc. No. 200 at 381:15-382:16.

[5] Nevertheless, sexual abuse by correctional officers exists.  In January 2014, the U.S. Department of Justice released a Survey of Sexual Violence in Adult Correctional Facilities between 2009 and 2011.  *See* www.bjs.gov/content/pub/pdf/ssvacf0911st.pdf.  According to the DOJ survey, "in 2011, correctional administrators reported 6,660 allegations of sexual victimization in prisons. Of these, 605 were substantiated based on follow-up investigation. Local jail authorities reported 2,042 allegations, of which 284 were substantiated.  About half (51%) involved allegations of nonconsensual sexual acts or abusive sexual contacts of inmates with other inmates, and half (49%) involved staff sexual misconduct or sexual harassment directed toward inmates." *Id*. at 1.

1    inapplicable to their Eighth Amendment claims based on repeated and pervasive sexual abuse.

2        **D.  A reasonable jury could find that Plaintiffs' Eighth Amendment rights were violated.**

3            Plaintiffs offered evidence that Abanico did not perform the searches in accordance with

4    his training, CDCR policy, or the practice of other correctional officers.  *See* pp. 2-4, *supra*.

5    Based on the evidence adduced at trial, a reasonable jury could find that (1) Abanico grabbed and

6    squeezed the genitalia of five inmates, some numerous times, while performing clothed-body

7    searches; (2) that in doing so, Abanico violated the training he received, as articulated in the

8    relevant CDCR training manual, as described by defense witness Stoltenberg at trial, and as

9    stipulated to by the parties; (3) that Abanico was the only correctional officer who squeezed

10   prisoners' genitalia during searches[6]; (4) that squeezing an inmate's genitalia served no legitimate

11   purpose when the objectives of a search could be accomplished by "cupping" or patting down the

12   groin as other officers did and Abanico was taught; and (5) that Abanico's actions injured the

13   Plaintiffs.  A reasonable jury could find that this constituted sexual assault, and was sufficiently

14   egregious, pervasive and/or widespread to violate Plaintiffs' Eighth Amendment rights.  *See*

15   *Schwenk*, 204 F.3d at 1197 ("In the simplest and most absolute of terms . . . prisoners [have a

16   clearly established Eighth Amendment right] to be free from sexual abuse . . . ."); *see also Jordan*

17   *v. Gardner*, 986 F.2d 1521, 1525-31 (9th Cir. 1993) (*en banc*) (policy requiring male guards to

18   perform clothed-body searches on female prisoners caused psychological harm to prisoners,

19   constituted cruel and unusual punishment, and established Eighth Amendment violation); *Bodie v.*

20   *Schnieder*, 105 F.3d 857, 861 (2nd Cir. 1997) (finding that plaintiff had not established he

21   experienced sexual abuse in violation of Eighth Amendment in that case, but that "there can be no

22   doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively,

23   sufficiently serious' enough to constitute an Eighth Amendment violation").[7]  The fact that

---

25       [6] The court notes that when Abanico demonstrated his search procedures to the jury, he did not follow the methods that he described in his testimony.

26       [7] A number of other courts have concluded that single, isolated instances of comparable touching during searches did not violate a prisoner's Eighth Amendment rights.  *See, e.g., Hughes v. Smith*, 237 Fed. Appx. 756, 759 (3rd Cir. 2007) (no Eighth Amendment violation where the correctional officer allegedly touched prisoner's genitals through clothing during a single pat-down search); *Harrell v. Shelly*, 2011 U.S. Dist. LEXIS 50697, *6-*7 (M.D. Ga. Apr. 4, 2011) (one time incident involving guard "scraping across [prisoner's] penis with a pair of channel locks

1   Abanico did not say anything sexual to Plaintiffs or touch their bare skin does not make the jury's

2   finding unreasonable.  And finally, although it was described as a promotion, a reasonable jury

3   could conclude based on the evidence presented that Abanico was in fact transferred to a position

4   where he no longer had any contact with inmates.

5       For these reasons, there was a legally sufficient basis for the jury to find for all Plaintiffs.

6   The jury's finding in favor of Cleveland and Trask therefore plainly does not constitute "plain

7   error [that] would result in a manifest miscarriage of justice."  *EEOC*, 581 F.3d at 962.

8       **E.  Abanico is not entitled to qualified immunity.**

9       Defendants argue that "it would not be clear to a reasonable officer that following the

10  Department's training manual, which requires a brief touching of an inmate's groin and buttocks

11  to accomplish the purpose of the search, would violate Plaintiffs' Eighth Amendment rights."

12  Doc. No. 217 at 5.  But Plaintiffs established at trial that correctional officers are trained *not* to

13  squeeze inmates' scrotums during a clothed-body search.  Plaintiffs testified that Abanico did

14  squeeze their penises and/or scrotums, in violation of the training he received.  Because there was

15  evidence that Abanico departed from the specific teachings of the training manual and from the

16  regular practice of other correctional officers, Defendants cannot rely on the training manual to

17  establish Abanico's reasonable belief that his conduct was lawful.  *Cf. Abanico II*, *supra* at 8-9.

18  Given that Plaintiffs' constitutional right to be free from sexual abuse was clearly established at

19  the time of these events, and that Abanico violated that right, Abanico was not entitled to qualified

20  immunity under *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

21  **III. DEFENDANT CURRY.**

22      **A.  Failure to Intervene.**

23      Plaintiffs' claim against Defendant Curry is based on his failure to intervene to stop

24  Abanico from continuing his abusive searches.  Defendants argue that JMOL is warranted here

25

26  did not amount to Eighth Amendment violation); *Pantusco v. Sorrell*, 2011 U.S. Dist. LEXIS
    58040, *22 (D. N.J. May 31, 2011) (allegation that correctional officer groped plaintiff's genitals

27  during routine search did not state claim under Eighth Amendment because a single instance of
    groping does not amount to cruel and unusual punishment); *Escobar v. Reid*, 668 F. Supp. 2d

28  1260, 1278, 1295-96 (D. Colo. 2009) (suggestive, sexual touching by correctional officer did not
    state an Eighth Amendment violation).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  because there is no evidence that Curry had a realistic opportunity to intervene but failed to do so.

2  *See Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000) ("[police] officers can be held

3  liable for failing to intercede only if they had an opportunity to intercede . . . . we find that the

4  non-shooting and non-present officers cannot be held liable for failing to intercede to prevent the

5  shooting of the plaintiffs in the instant case"); *Hunter v. City & County of San Francisco*, 2013

6  U.S. Dist. LEXIS 74778, *21-*22 (N.D. Cal. May 28, 2013) ("A supervisor's failure to intervene

7  and bring his subordinates under control may, under some circumstances,  support liability under

8  Section 1983") (citing *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003)); *see also*

9  *Harrison v. Hedgpeth*, 2014 U.S. Dist. LEXIS 1114, *26 (N.D. Cal., Jan. 6, 2014) (to prevail on

10  failure to intervene claim, "the plaintiff must show that the defendant-bystanders had enough time

11  to observe what was happening and to intervene to stop it").

12  **B.  A reasonable jury could find that Curry's failure to intervene injured Cleveland,**
**Morris and Trask, but there was no legally sufficient basis for the jury to find that**
13  **Curry's failure to intervene injured Huff and Jones.**

14       Defendants argue that Curry was not present for any of the searches, and that Plaintiffs

15  introduced no evidence that Curry could have physically intervened to prevent the searches.  Doc.

16  No. 217 at 6.  They further point out that there was no evidence regarding when Curry learned of

17  the improper searches, or that he was in a position to prevent them from occurring.  *Id.* at 7.  Thus,

18  there was no evidence that the Plaintiffs were harmed as a result of Curry's failure to intervene.

19  The court notes that this is not a class action.  Even if there were systemic or institutional

20  problems, Curry cannot be liable for failing to intervene in *this* case unless his failure to intervene

21  harmed *these* Plaintiffs.

22       Curry testified that he became aware of the allegations asserted against Abanico after a

23  "group appeal" was signed by approximately 150 inmates.  Cleveland filed that group appeal with

24  prison officials on September 6, 2006.  Plaintiffs Cleveland, Morris and Trask all testified that

25  Abanico searched them and squeezed their genitals in June 2007, more than 9 months after

26  Cleveland filed the group appeal.  They also complained to officials individually about Abanico's

27  conduct, filing formal grievances more or less contemporaneously with the incidents.  A

28  reasonable jury could find that Curry learned of the group appeal and conducted his investigation

1    within a few months of the time Cleveland filed it in September 2006.  A reasonable jury also

2    could find that Curry, as warden, had the authority to retrain or reassign Abanico or otherwise

3    ensure that he no longer had contact with prisoners.  Had Curry intervened in a timely manner, he

4    could have prevented Abanico from squeezing the genitalia of Morris, Trask and Cleveland.

5            With respect to Jones and Huff, the analysis is different.  Jones testified that Abanico

6    squeezed his genitals only once, in August 2006.  Huff testified that Abanico repeatedly searched

7    him, roughly and firmly, from 2006 to 2008, but that Abanico squeezed his genitals only once – in

8    July 2006.  The searches Abanico conducted on Huff subsequent to the initial July 2006 search did

9    not involve the squeezing and grabbing that is at issue in this lawsuit.  Accordingly, the court finds

10   that Curry's failure to intervene did not cause Huff or Jones harm, because the harm that was done

11   to them occurred before Curry had the opportunity to intervene.  Defendant Curry's renewed

12   JMOL therefore is granted as to Plaintiffs Huff and Jones, and otherwise denied.

## MOTION FOR REMITTITUR

14           The jury awarded punitive damages of $5,000 to each Plaintiff against Abanico, and of

15   $20,000 to each Plaintiff against Curry.  *See* Doc. No. 211.  Defendants argue that the punitive

16   damages against both Abanico and Curry are excessive.

### I.  LEGAL STANDARD.

18           In reviewing the constitutionality of a punitive damages award, courts must analyze "(1)

19   the degree of reprehensibility, (2) the disparity between the harm suffered and the punitive

20   damages award, and (3) the disparity between this remedy and the civil penalties authorized or

21   imposed in comparable cases."  *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996).  In

22   assessing the reprehensibility of a defendant's conduct, courts must evaluate a number of factors,

23   including whether the harm caused was physical as opposed to economic; whether the conduct

24   demonstrated an indifference to or a reckless disregard for the health or safety of others; whether

25   the conduct involved repeated actions or was an isolated incident; and whether the harm was the

26   result of intentional malice, trickery, or deceit, or mere accident.  *State Farm Mut. Ins. Co. v.*

27   *Campbell*, 538 U.S. 408, 419 (2003).  "Reprehensibility falls along a scale, with 'acts and threats

28   of violence at the top, followed by acts taken in reckless disregard for others' health and safety,

United States District Court
Northern District of California

16

affirmative acts of trickery and deceit, and finally, acts of omission and mere negligence.'"

*Mendez v. Cnty. of San Bernardino*, 540 F.3d 1109, 1121-23 (9th Cir. 2008) (quoting *Swinton v. Potomac Corp.*, 270 F.3d 794, 818 (9th Cir. 2001)).

## II.   DEFENDANT ABANICO.

Defendants argue that the punitive damages award against Abanico is excessive because his conduct was not reprehensible.[8]  They point out that Abanico only searched Jones and Morris once, and only touched their groins for two to three seconds.  They acknowledge that Abanico searched Trask and Huff "multiple" times, but again argue that the touching did not exceed two to three seconds.  They do not address Abanico's conduct as to Cleveland.  With respect to all Plaintiffs, Defendants argue that Abanico did not say anything sexual to them, touch them beneath their clothes, or physically injure them.  But, the jury found that Abanico sexually assaulted Plaintiffs.  This constitutes reprehensible conduct.  *See Wood*, 692 F.3d at 1049-51 ("sexual contact between a prisoner and a prison guard serves no legitimate role and is simply not part of the penalty that criminal offenders pay for their offenses against society"); *Schwenk*, 204 F.3d at 1197 ("In the simplest and most absolute of terms . . . prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse . . . .").  Defendants argue that Abanico's conduct, if it was wrong at all, more closely resembles a "mere accident than [] malice, . . . was an isolated incident, [and] posed no risk" to Plaintiffs' health or safety."  Doc. No. 223 at 4 (quoting *Mendez*, 540 F.3d at 891).  The court disagrees: the evidence adduced at trial would allow a reasonable jury to find that the harm was physical and emotional as opposed to economic; that the conduct involved repeated actions (for some of the Plaintiffs individually and for the Plaintiffs as a whole); that the conduct evinced at least reckless disregard for the emotional health of the Plaintiffs; and that the conduct was intentional.

Defendants do not address the remaining *Gore* guideposts, but the court finds that they also

---

[8] Defendants suggest that the jury's verdict will deter future officers from searching prisoners' groin area and lead to safety issues in prisons.  *See* Doc. No. 217 at 12.  The court finds that, on the contrary, the jury award will only deter future officers from deviating from the CDCR training manual when performing searches, and will deter future officers from squeezing prisoners' scrotums when performing searches.

United States District Court
Northern District of California

support the jury's award.  There is no glaring disparity between the compensatory damages awarded here (between $2,000 and $10,000), and a punitive damages award of $5,000.  Finally, Plaintiffs cite several civil rights statutes that provide penalties on par with the punitive damages awarded here.  *See* Cal. Civ. Code §§ 51, 51.7, 52(b)(2) & 52.1(b).

Defendants' motion for remittitur with respect to the jury's award of punitive damages against Abanico therefore is denied.

## III. DEFENDANT CURRY.

The jury found that Curry's inaction merited punitive damages because he acted with "malice, oppression, or reckless disregard" for Plaintiffs' rights, and awarded $20,000 in punitive damages to each Plaintiff against Curry.  *See* Doc. No. 211.  Defendants also argue that the punitive damages award against Curry should be reversed because Curry's conduct was not reprehensible.

The evidence adduced at trial established that, when Curry learned about the abuse allegations, he investigated them.  He spoke with the Deputy Warden, the In-Service Training Lieutenant, and the Security Squad Lieutenant.  They looked into the situation and assured Curry that Abanico was performing his job correctly.  Curry testified at length about his taking the initial allegations seriously in light of his own training and experience in performing clothed-body searches, and his concern for the safety of the facility.  Curry also spoke with Abanico and felt Abanico was being honest and just doing his job.  Based on his investigation and the reports of his staff, Curry concluded that he did not need to intervene in the situation.  He did counsel Abanico to find a way to search prisoners without causing so much hate.  Thus, while Curry's inaction harmed several of the Plaintiffs, Curry did not ignore the allegations, but investigated them and relied on his staff's reports before concluding he did not need to intervene.  There was no evidence that Curry's actions were the result of "intentional malice, trickery, or deceit."  *State Farm*, 538 U.S. at 419.  However, Curry's inaction lead to physical and emotional, as opposed to economic, harm, and Abanico's conduct involved repeated actions rather than an isolated incident.  Although several of the *State Farm* factors weigh against Curry, and although the jury signaled it wanted Curry to have intervened in this situation, Curry's degree of reprehensibility amounts, at most, to

United States District Court
Northern District of California

18

reckless disregard for the health and safety of the prisoners in his charge.  *See Mendez*, 540 F.3d at 1121-23.  The second *Gore* guidepost weighs in Curry's favor as the jury did not find him responsible for any compensable harm and awarded only nominal damages against him.[9]  Thus, the ratio of 20,000 to 1 is significant.  The third *Gore* guidepost weighs against Curry, as Plaintiffs have cited civil statutes that contemplate similar size awards in cases involving sexual discrimination or harassment.  *See supra*.

In light of Curry's relatively low degree of reprehensibility, the court finds that the $20,000 award is constitutionally excessive.  *See Gore*, 517 U.S. at 575 ("Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct").  A $5,000 punitive damages award, however, would not be constitutionally excessive.  The court has found that there is no disparity between the harm Plaintiffs suffered directly as a result of Abanico's actions and the jury's $5,000 punitive damages award to each Plaintiff against Abanico, and that there was no disparity between that award and the available civil remedies.  Nor is a 5,000 to 1 ratio excessive in this Section 1983 case that involves repeated violations of Plaintiffs' Constitutional rights.  *See Arizona v. Asarco LLC*, 733 F.3d 882, 885-892 (9th Cir. 2013) (125,000:1 ratio "reasonable" in a "particularly egregious" Title VII sexual harassment case); *see also Padgett v. Wright*, 516 Fed. Appx. 609 (9th Cir. 2013) ("The reduced award of $10,000 was not excessive because the single digit ratio can be exceeded in §1983 suits that have no actual damages") (citing *Mendez*, 540 F.3d at 1121-23 ("Ratios in excess of single digits in § 1983 suits therefore will not generally violate due process when the victim suffers no compensable injury")).

Curry's failure to intervene allowed Abanico to sexually assault Cleveland, Morris and Trask.  While Curry's conduct may have been on the low end of the scale of reprehensibility, the jury found that it was, at least, in reckless disregard of Plaintiffs' rights.  A reasonable jury could reach this conclusion based on the evidence presented.  Accordingly, Defendants' motion for

_____

[9] While the jury did not award any compensatory damages against Curry, it did award compensatory damages against Abanico; thus, the jury fully compensated Plaintiffs for their injuries and could not properly award additional compensatory damages against Curry.  The jury nonetheless found that Curry's failure to intervene caused Plaintiffs' rights to be violated.

1   remittitur is granted, but only in part.  The punitive damages awarded to Plaintiffs Cleveland,

2   Morris and Trask against Defendant Curry are reduced from $20,000 to $5,000.  In light of the

3   court's granting Defendants' renewed motion for JMOL with respect to Plaintiffs Huff and Jones,

4   the motion for remittitur as to these two Plaintiffs is denied as moot.

### NEW TRIAL

6          Defendants move for a new trial on three grounds: the court's excessive force instruction

7   and related verdict form were erroneous and prejudicial; the court improperly rejected Defendants'

8   proposed Prison Litigation Reform Act ("PLRA") jury instruction; and, Plaintiffs' counsel

9   improperly and repeatedly referenced matters that this court had excluded *in limine*.

## I.  LEGAL STANDARD.

11         "A court may, on motion, grant a new trial to all or some of the issues -- and to any party --

12  . . . (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an

13  action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).

> Rule 59 does not specify the grounds on which a motion for a new trial may be granted. Rather, the court is bound by those grounds that have been historically recognized. Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving. [The Ninth Circuit has] held that the trial court  may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.

20  *Molski v. M.J. Cable, Inc*., 481 F.3d 724, 729 (9th Cir. 2007) (internal citations, quotation marks,

21  and alterations omitted); *see also Jorgensen v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003)

22  ("Since specific grounds for a motion to amend or alter are not listed in the rule, the district court

23  enjoys considerable discretion in granting or denying the motion") (internal quotations omitted).

## II.  EXCESSIVE FORCE INSTRUCTION AND JURY VERDICT FORM.

25         The court gave jurors the following instruction:

> As previously explained, each plaintiff has the burden to prove that the acts of defendant Abanico deprived him of particular rights under the United States Constitution.  In this case, each plaintiff alleges that defendant Abanico deprived him of his rights under the Eighth Amendment to the Constitution when Abanico

United States District Court
Northern District of California

20

United States District Court
Northern District of California

conducted clothed-body searches at the Correctional Training Facility.

Under the Eighth Amendment, a convicted prisoner has the right to be free from "cruel and unusual punishment." In order to prove the defendant deprived each plaintiff of his Eighth Amendment right, each plaintiff must prove by a preponderance of the evidence that defendant Abanico sexually assaulted one or more of the Plaintiffs.

In determining whether defendant Abanico sexually assaulted one or more of the Plaintiffs in this case, consider the need to use force in conducting the search, the relationship between that need and the amount of force used, and whether defendant applied the force in good faith.

*See* Doc. No. 203 at 31.[10]  The verdict form asked the jury: "Do you find by a preponderance of the evidence that any of the Plaintiffs' Eighth Amendment rights were violated by Defendant Abanico." Doc. No. 211 at 1.  Defendants objected to the instruction and verdict form at trial. They now reiterate their argument that the court improperly omitted the "malicious and sadistic" standard that applies to excessive force cases.  *See, e.g.,* Ninth Circuit Model Civil Jury Instruction No. 9.24.  In essence, Defendants argue that the court's instruction was not fair, which is a recognized ground for a Rule 59(a) motion.

Defendants argue that the court erred by preventing the jury from considering whether Abanico acted with the requisite evil intent.  Doc. No. 216 at 5.  But, the court declined to use the "malicious and sadistic" language found in the standard excessive force model jury instruction because in cases where the alleged excessive force claim is sexual abuse, the Ninth Circuit has squarely held that sexual conduct "itself constitutes sufficient evidence that force was used 'maliciously and sadistically' for the very purpose of causing harm."  *Wood*, 692 F.3d at 1049-51. Indeed, the comments to the Ninth Circuit Civil Model Jury inform users that, "if the alleged excessive force claim is sexual abuse, *see Wood v. Beauclair*, 692 F.3d 1041, 1050 (2012) (coercive sexual actions serves no valid objective *and the conduct 'itself constitutes sufficient evidence that force was used 'maliciously and sadistically' for the very purpose of causing harm'*). The harm required in the third element of this instruction may be an offense to human dignity"

---

[10] The version of the instructions that was given to the jury is found at Doc. No. 203.  The version that Defendants cite in their motion (Doc. No. 204) was only given to the parties for discussion purposes, and thus included additional materials such as headings and legal citations.

(emphasis added).  This court thus turned to *Wood* to draft an appropriate jury instruction and verdict form.

In *Wood*, the Ninth Circuit reiterated that sexual harassment or abuse of a prisoner by a correctional officer violates the prisoner's Eighth Amendment rights.  692 F.3d at 1046.  The prisoner alleged that, after he terminated a consensual relationship with a correctional officer, the correctional officer entered his cell and stroked his penis.  The district court found that the plaintiff had failed to offer evidence establishing that the officer acted with a sufficiently culpable mind (the "subjective prong") or that the act was harmful enough (the "objective prong").  The district court found that the defendant had not "acted maliciously and with the intent to inflict harm," but rather than with the intent to resume her prior relationship with the plaintiff. [11]  *Id.* at 1050.  Accordingly, the district court found that the incident did not constitute an Eighth Amendment violation and granted defendant's motion for summary judgment.  The Ninth Circuit reversed.  It observed that the "'malicious and sadistic' standard" arose from the recognition that "when a prison disturbance occurs, prison officials must" take quick and decisive actions that should be accorded "'wide-ranging deference.'"  *Id.* at 1049-1050 (internal citations omitted).  Thus, in order to establish an excessive force claim, prisoners traditionally must establish that prison officials acted with the requisite subjective intent, *i.e.*, that the force used by prison officials was malicious and sadistic.  *Id.*  However, "sexual contact between a prisoner and a prison guard serves no legitimate role and is simply not part of the penalty that criminal offenders pay for their offenses against society.  Where there is no legitimate penological purpose for a prison official's conduct, courts have presum[ed] malicious and sadistic intent."  *Wood*, 692 F.3d at 1050 (internal citations and quotations omitted).  Because the defendant "was not attempting to discipline Wood or quell a

---

[11] The defendant acknowledged that she had engaged in sexual conduct with the plaintiff, but argued that the relationship was consensual and thus there was no abuse and no Eighth Amendment violation.  The district court agreed and found that the plaintiff could not state an Eighth Amendment claim due to the consensual nature of their relationship.  The Ninth Circuit examined the "pronounced dichotomy of control between prison guards and prisoners," noted that the prisoner-guard relationship fostered sexual abuse, and noted that "sexual abuse in prison is prolific."  *Id.* at 1047.  After the finding that prisoners were entitled to a presumption that sexual conduct was not consensual, the Ninth Circuit found that the plaintiff's allegation that he had broken off the relationship after a fight demonstrated non-consent for purposes of summary judgment.  *Id.* at 1049.

United States District Court
Northern District of California

prison riot, but instead acted for her own gratification[, her] coercive sexual actions served no valid objective and []in such cases, *the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'*" *Id*. (internal citations and quotations omitted) (emphasis added).  Applying that reasoning, the Ninth Circuit found that sexual assault on a prisoner by a prison guard was "always deeply offensive to human dignity and devoid of penological justification," and that this offense to human dignity satisfied the objective element of an Eight Amendment violation: that the defendant's conduct caused harm to the plaintiff. *Id*. at 1051.

Here, Plaintiffs alleged that Abanico sexually assaulted them by squeezing their genitalia without a legitimate penological objective. *See supra*.  The court instructed the jury that in "determining whether defendant Abanico sexually assaulted one or more of the Plaintiffs in this case," it should "consider the need to use force in conducting the search, the relationship between that need and the amount of force used, and whether defendant applied the force in good faith." The jury found that Abanico had "sexually assault[ed]" Plaintiffs, in violation of the Eighth Amendment.  Under *Wood*, Abanico's sexual conduct "itself constitute[d] sufficient evidence that force was used 'maliciously and sadistically' for the very purpose of causing harm" (692 F.3d at 1049-51) rendering any further instruction on this element, or on the jury verdict form, superfluous.  Furthermore, any error was harmless given that the jury found that Defendants' conduct was "malicious, oppressive, or in reckless disregard of Plaintiffs' rights" when they awarded significant punitive damages to Plaintiffs against Defendants.  The court accordingly denies the motion for new trial on this ground.

### III. PLRA INSTRUCTION.

Defendants argue that the court erred in rejecting their PLRA instruction, which would have instructed jurors that "no Federal civil action may be brought by a prisoner . . . for mental or emotional injury . . . suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18)."  Doc. No. 216 at 11 (quoting 42 U.S.C. § 1997e(e)).  Plaintiffs did not allege that Abanico committed one of the sexual acts defined in the statute, and Defendants argue that Plaintiffs failed to show more than *de minimis* (if

23

United States District Court
Northern District of California

1   any) physical injury resulted from Abanico's conduct.  Under the PLRA, Defendants reason,

2   Plaintiffs' claims fail.  The court disagrees.

3         First, Defendants did not submit a PLRA instruction to the court when they filed their

4   proposed jury instructions.  *See* Doc. No. 155.  At the close of the evidence, Defendants moved for

5   judgment as a matter of law on a number of grounds.  They argued that Plaintiffs Huff, Morris and

6   Jones had failed to submit evidence that they had suffered more than *de minimis* injuries and thus,

7   their claims were barred by the PLRA.  *See* Doc. No. 207 at 519:22-522:22.  When the court

8   denied their Rule 50 motion, Defense counsel then stated that they would request an instruction on

9   the issue.  *Id.* at 522:24-523:3.  Defendants offered an instruction entitled "Physical Injury--De

10  Minimis Injury Insufficient," which the court denied based on *Woods*.  *Id* at 567:7-9.  The court

11  provided the parties with copies of its proposed jury instructions, which did not include an

12  instruction based on the PLRA, to be reviewed overnight.  The next day, Defendants objected to

13  the court's Instruction 9.24 but did not object to the omission of a PLRA instruction.  *See* Doc.

14  No. 208 at 572:15-578:1 (after discussing Defendants' objections to Instruction No. 9.24, "Court:

15  'Any other objections to the instructions?' Defendants: 'Not on our side'"); *see also id* at 582-83

16  (the court again asks whether parties have any objections other than to 9.24).  Thus, Defendants

17  waived this argument by failing to object when the court distributed its proposed final jury

18  instructions to the parties for review and comment.  *See* Fed. R. Civ. P 51(c); *cf. Medtronic, Inc. v.*

19  *White*, 526 F.3d 487, 495 (9th Cir. 2008) (Ninth Circuit recognizes "limited exception" to Rule 51

20  waiver rule, which "is available 'when (1) throughout the trial the party argued the disputed matter

21  with the court, (2) it is clear from the record that the court knew the party's grounds for

22  disagreement with the instruction, and (3) the party offered an alternative instruction'").

23         Second, for the reasons discussed above at pp. 9-13, the PLRA does not bar Plaintiffs'

24  claims for damages here.  Plaintiffs established that Abanico sexually assaulted them, some

25  several times, by grabbing and squeezing their genitals during clothed-body searches, in violation

26  of their Eighth Amendment rights.  The court finds that sexual assault, which is "always deeply

27  offensive to human dignity" and "totally without penological justification" (*Wood*, 692 F.3d at

28  1050), constitutes more than "*de minimis*" injury under the PLRA.  In the alternative, the court

24

finds that the PLRA's "physical injury" requirement does not apply to Plaintiffs' Eighth

Amendment claims based on pervasive, widespread sexual assaults by a correctional officer.

**IV.** ***IN LIMINE*** **MATTERS.**

Before trial, Defendants moved *in limine* for an order excluding any evidence of

complaints against Abanico filed by inmates who were not plaintiffs in this action.  Doc. No. 156.

Specifically, Defendants sought to exclude evidence of other complaints about Abanico involving

other prisoners, including a "group appeal" signed by more than 120 prisoners.  The court

granted the motion, "except that this type of evidence may be used for impeachment purposes or if

it otherwise becomes relevant at trial.  If Plaintiffs' counsel contends the information becomes

relevant at trial or wishes to use it for impeachment purposes, he should request a sidebar."  Doc.

No. 192 at 2.

At trial, Exhibits 3-5, which Defendants had sought to exclude, were not admitted.  *See*

Doc. Nos. 156, 213.  The court also excluded references to and the signatures of prisoners who

signed the "group appeal" but were not plaintiffs in this action.  *See* Doc. No. 199 at 147:1-21.  At

trial, Defendants objected to a number of statements by Plaintiffs' counsel that they believed

violated the court's order.  The court sustained a number of objections.  Then, Plaintiffs' counsel

read the deposition of Defendant Curry into the record.  Curry testified extensively about the

group appeal.  *See supra* at 5.  He recalled that at some point he became aware that there was a list

"with about 150 names on it" that was submitted in support of a complaint about Abanico; he

investigated the allegations and was satisfied that Abanico was performing the searches correctly;

he suspected that many if not most of the signatories to the complaint were targeting Abanico or

just signed a document that had been put in front of them by a fellow inmate.  *Id*.  None of the

testimony was hearsay, and it was directly relevant to Plaintiffs' failure to intervene claim against

Curry.

First, Defendants did not object to Curry's testimony about the "group appeal" filed by

"150" prisoners.  Defendants accordingly waived this objection.

Second, although Defendants argue that Plaintiffs' counsel's numerous references to "other

complaints" and "group appeals" throughout the trial were prejudicial, any error caused by having

United States District Court
Northern District of California

1   Plaintiffs testify or Plaintiffs' counsel argue about these matters would be harmless in light

2   Curry's extensive testimony on the same topic.

3         Finally, Defendants opened the door partially to the testimony.  *See* Doc. No. 199 at

4   141:25-142:6 (Defense counsel asked Cleveland whether he had any witnesses to the incident;

5   Cleveland replied "I have 127 witnesses"; Defense counsel responded, "but none of them are here

6   today"), 144:16-145:7 ("To the extent that counsel's elicited testimony regarding the 127

7   witnesses that he has indicated were witnesses to this, you may ask Mr. Cleveland tomorrow

8   morning as to who saw him, who else saw this happen and under what circumstances"); Doc. No.

9   200 at 162:18-163:8 (Plaintiffs' counsel asked Cleveland what he meant by "127 witnesses" and

10  Cleveland replied, "I was referring to inmates that have been violated in that same manner and

11  who have witnessed other inmates being violated in that same manner;" court sustained objection

12  to further questioning on issue).

13        Curry's testimony, which was properly admitted, expounded at length on the topic of the

14  "group appeal" submitted by "150" inmates complaining about Abanico's search procedures.

15  After reviewing the "totality of the circumstances," the court finds that the likelihood that the jury

16  was prejudiced by any statements Plaintiffs' counsel made regarding other inmate complaints or

17  appeals against Abanico was low.  *See Hemmings v. Tidyman's Inc*., 285 F.3d1174, 1193 (9th Cir.

18  2002).  The court also denies the motion for new trial on this ground.

## CONCLUSION

20  For the reasons stated above, the court:

21      (1) DENIES Defendant Abanico's motion for JMOL;

22      (2) GRANTS Defendant Curry's motion for JMOL as to Plaintiffs Huff and Jones, and

23          directs that judgment be entered against Huff and Jones and in favor of Curry;

24      (3) DENIES Defendant Curry's motion for JMOL as to Plaintiffs Cleveland, Morris and

25          Trask;

26      (4) DENIES Defendant' Abanico's motion for a remittitur;

27      (5) DENIES AS MOOT Defendant Curry's motion for a remittitur as to Plaintiffs Huff and

28          Jones;

(6) GRANTS Defendant Curry's motion for remittitur in part as to Plaintiffs Cleveland, Morris and Trask; and,

(7) DENIES Defendants' motion for a new trial.

In light of the court's rulings, Plaintiffs will recover as follows:

(1) Plaintiff Cleveland: from Defendant Abanico, $2,000 in compensatory damages and $5,000 in punitive damages; from Defendant Curry, $1.00 in nominal damages and $5,000 in punitive damages;

(2) Plaintiff Huff: from Defendant Abanico, $5,000 in compensatory damages and $5,000 in punitive damages; from Defendant Curry, $0.00 in nominal damages and $0.00 in punitive damages;

(3) Plaintiff Jones: from Defendant Abanico, $2,000 in compensatory damages and $5,000 in punitive damages; from Defendant Curry, $0.00 in nominal damages and $0.00 in punitive damages;

(4) Plaintiff Morris: from Defendant Abanico, $2,000 in compensatory damages and $5,000 in punitive damages; from Defendant Curry, $1.00 in nominal damages and $5,000 in punitive damages; and,

(5) Plaintiff Trask: from Defendant Abanico, $10,000 in compensatory damages and $5,000 in punitive damages; from Defendant Curry, $1.00 in nominal damages and $5,000 in punitive damages.

This represents a total award of $61,003.

The court will address Plaintiffs' motion for attorneys' fees separately.

**IT IS SO ORDERED**.

Dated: February 21, 2014

_____
NANDOR J. VADAS
United States Magistrate Judge